[No. H014078. Sixth Dist. Jan. 14, 1997.]

COUNTY OF ALAMEDA et al., Plaintiffs and Appellants, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

1692

## COUNSEL

Steven M. Woodside, County Counsel, Ann Miller Ravel, Chief Assistant County Counsel, Cotchett & Pitre, Joseph W. Cotchett, Nancy L. Fineman, Ruby & Schofield, Allen Ruby and Glen W. Schofield for Plaintiffs and Appellants.

J. Michael Reidenbach, Richard L. Meiss, Joseph I. Kelly, Heller, Ehrman, White & McAuliffe, M. Laurence Popofsky, Kirk G. Werner, Anthony J. Justman, Hoge, Fenton, Jones & Appel, Charles H. Brock and Robert S. Luther for Defendant and Respondent.

Ruth Sorensen as Amicus Curiae.

## OPINION

**MIHARA, J.**—In 1971, the California Legislature enacted Public Utilities Code[1] section 6201.5 which, for the first time, authorized counties to use the franchise-granting provisions of the Franchise Act of 1937. In this case we hold the enactment did not change the franchise fee formula contained in preexisting county franchises granted under the Broughton Act.

### STATUTORY BACKGROUND

Prior to 1937, the Broughton Act, enacted in 1905 and codified in chapter 1 of division 3 of the Public Utilities Code, sections 6001-6092, was the only statutory scheme for counties and most cities of California to use to grant utility franchises and enter into franchise contracts. The scope of franchises

---

[1] All further statutory references are to the Public Utilities Code unless otherwise indicated.

granted under the Broughton Act is set forth in section 6001.[2] The Broughton Act prescribes procedures for notice and a public auction whenever a county or city proposes to grant a utility franchise under its terms. (See §§ 6005 [advertisement for bids must be published and state that franchise will be awarded to highest bidder], 6006 [bid advertisement must state character of franchise, duration and payment formula], 6007 [describing public auction process].)

Section 6006 specifically states that the franchisee shall "pay to the county or municipality two percent (2%) of the gross annual receipts of the grantee arising from the use, operation, or possession of the franchise." Thus, under the Broughton Act, "[i]t is not 2 per cent of its total gross receipts but only 2 per cent of its gross receipts 'arising from the use' of the franchises that is exacted as a payment for the use of such franchises." (*County of L.A.* v. *Southern Etc. Gas Co.* (1954) 42 Cal.2d 129, 138 [266 P.2d 27].)

In 1937, the California Legislature enacted the Franchise Act of 1937 (the 1937 Act) (§ 6201 et seq.) which provided an alternative scheme by which cities, but not counties, could grant franchises. The 1937 Act explicitly states it provides a franchising scheme distinct and separate from the Broughton Act. (§ 6204 ["This chapter provides a procedure, alternative to the procedure provided in Article 1 of Chapter 1 of this division . . . ."].) It provides that a franchise granted under the 1937 Act is governed exclusively by its terms, and, in accepting a franchise under the 1937 Act, the utility abandons franchises granted under other laws. (§§ 6204, 6261.)

Most pertinent to this appeal, section 6231, subdivision (c), in the 1937 Act sets forth a different payment formula from that contained in the Broughton Act: "[T]he applicant if granted the franchise will pay to the municipality during the life of the franchise 2 percent of the applicant's gross annual receipts arising from the use, operation, or possession of the franchise, except that this payment shall be not less than 1 percent of the applicant's gross annual receipts derived from the sale within the limits of the municipality of the utility service for which the franchise is awarded."

---

[2]Section 6001 provides: "Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street or interurban railroads upon any public street or highway, to lay gas pipes for the purpose of carrying gas for light, heat, or power, to erect poles or wires for transmitting electricity for light, heat, or power, along or upon any public street or highway, or to exercise any other privilege whatever proposed to be granted by the governing or legislative body of any county, city and county, or city shall be granted upon the conditions in this article provided, and not otherwise, except when such franchises are granted pursuant to Chapters 2 or 3 of this division."

Section 6231, subdivision (c) contains both the Broughton Act formula (i.e., "2 percent of the applicant's gross annual receipts arising from the use, operation, or possession of the franchise") and a separate formula (i.e., "1 percent of the applicant's gross annual receipts derived from the sale within the limits of the municipality of the utility service"), and requires that the greater amount be paid. California cities lobbied for the adoption of the 1 percent formula because judicial interpretation of the Broughton Act formula had created accounting problems for both cities and utilities, and the 1 percent formula generally resulted in higher franchise fees than use of the Broughton Act formula. (See David, *The Work of the 1937 California Legislature (Municipal Matters)* (1937) 11 So.Cal.L.Rev. 1, 107.)

The 1937 Act did nothing to change the Broughton Act. Consequently, the Broughton Act remained the only scheme by which counties could grant utility franchises.

In 1971, the Legislature amended the 1937 Act so as to allow counties to employ its provisions. It did so by enacting section 6201.5 which provides: "As used in this chapter, municipality includes counties, but no county shall grant a franchise pursuant to this chapter in any incorporated area."

FACTUAL AND PROCEDURAL BACKGROUND

From 1937 until 1966, Pacific Gas and Electric Company (PG&E) entered into 85 gas and/or electric franchise contracts with 49 counties.[3] When each of the franchises was granted, they were "granted under and pursuant to the provisions of the laws of the State of California which relate to the granting of franchises by counties." At the time, this could only mean they were granted pursuant to the Broughton Act. The franchise fee formula contained in each of the contracts tracks the language set forth in the Broughton Act.

However, each franchise states that it is indeterminate. That is, it has no term of years and remains in force indefinitely, unless it is surrendered or abandoned, purchased, taken by eminent domain, or forfeited. The language in the contracts is similar to that in section 6264,[4] part of the 1937 Act. The Broughton Act contains no comparable provision authorizing indeterminate franchises.

---

[3]We are mindful that the acceptance of a franchise is a matter of contract. However, the offer of such a contract is on a take-it-or-leave-it basis. "[A] franchisee may only accept a franchise on the terms dictated by the Legislature." (*County of Sacramento* v. *Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 305 [238 Cal.Rptr. 305].) We thus resolve the issues in this case by looking for legislative intent.

[4]Section 6264 provides: "Every franchise granted pursuant to this chapter, except when a definite term therefor is specified in the ordinance granting it, is indeterminate, that is to say,

Following the 1971 amendment to the 1937 Act, PG&E continued to pay franchise fees calculated under the provisions of the Broughton Act and the counties accepted these fees. This practice continued for 23 years.

In 1994, Alameda and Santa Clara Counties, as the named plaintiffs in a class action which includes 49 counties, filed suit against PG&E, for among other things violation of statute, breach of contract, and unjust enrichment. The parties stipulated to certification of the class for the purposes of resolving the statutory interpretation issues on which the action is based. The counties voluntarily dismissed the remaining causes of action and filed a separate suit for these claims. That action was stayed pending the resolution of this appeal.

PG&E filed a motion for summary judgment, based on statutory interpretation grounds as well as constitutional and equitable defenses. The trial court granted the motion.

In its tentative decision the court stated: "It appears quite clear that the purpose of the 1971 Amendment was to allow counties to use the alternative rate schedule available to cities under the 1937 Act. However, what is less clear is whether the Legislature intended the 1971 Amendment to affect pre-existing franchises, or whether the Legislature intended the 1971 Amendment to govern only those franchises entered into *after* the Amendment took effect." (Original italics.) The court concluded the 1971 amendment provided a new fee schedule for franchises entered into by counties after the effective date of the amendment.

## DISCUSSION

### Standard of Review

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ▮ In reviewing a ruling on a motion for summary judgment, an appellate court 1) identifies the issues framed by the pleadings, 2) determines whether the moving party has established facts which negate the opposing party's and justifies a judgment in the moving party's favor, and 3) where a summary judgment motion prima facie justifies a judgment, determines whether the opposition demonstrates the existence of a triable, material factual issue. (*Turner* v. *Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252-1253 [32 Cal.Rptr.2d 223, 876 P.2d

every such franchise shall endure in full force and effect until, with the consent of the Public Utilities Commission, it is voluntarily surrendered or abandoned by its possessor, or until the State or some municipal or public corporation purchases by voluntary agreement or condemns and takes under the power of eminent domain, . . . or until the franchise is forfeited for noncompliance with its terms by the possessor thereof."

1022].) Where, as here, the construction of a statue is at issue, we independently review the statute to determine the validity of the judgment. (*Harris* v. *Mothers Against Drunk Driving* (1995) 40 Cal.App.4th 16, 20 [46 Cal.Rptr.2d 833].)

*Section 6201.5*

■ "We begin as always 'with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.' . . . To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. . . . 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Trope* v. *Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259], citations omitted.)

However, "[w]e are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute].' " (*Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179].) In *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court stated: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ."

■ In 1971, the Legislature expanded the 1937 Act to include counties by enacting a single-sentence statute. Section 6201.5 provides: "As used in this chapter, municipality includes counties, but no county shall grant a franchise pursuant to this chapter in any incorporated area." The statute merely broadens the definition of "municipality" to include counties. By its terms the statute is limited to "this chapter," i.e., chapter 2 of division 3 of the Public Utilities Code, the 1937 Act. The language of the statute makes no reference to the modification of franchises granted under the Broughton Act, the provisions for which are contained in a different chapter. Nor does the language suggest that it affects existing rights or obligations. If anything, the last clause of the statute suggests that a prospective application was intended to allow future grants of franchise rights.

The counties take issue with this latter suggestion. They maintain the verb "grant" is not limited to a one-time event; "its meaning includes a continuing allowance or permission." They conclude it is natural "to read § 6202,[5] as amended by § 6201.5, to include in the franchises that a county 'may grant' the future operation of the county franchises already in existence." We disagree.

The usual or ordinary meaning of the verb "grant" is "to permit as a right, privilege, indulgence, or favor." (Webster's New Internat. Dict. (3d ed. 1981) p. 989.) We read this definition as a one-time act of giving rights to the grantee. Moreover, we cannot read section 6202, in conjunction with section 6201.5, as permitting a change of terms to franchises already in existence. While a franchise contract is required to contain certain provisions dictated by the Legislature, the parties are not free to alter the terms of the agreement once it is executed. (See *County of Sacramento* v. *Pacific Gas & Elec. Co.*, *supra*, 193 Cal.App.3d at p. 308, fn. 5.)

Faced with the clear meaning of the language of section 6201.5, the counties focus on the legislative intent in enacting the statute. They argue that the purpose of the 1971 amendment was to allow counties to use the same alternate rate schedule that was available to cities under the 1937 Act.[6] They maintain that in 1971, all the county members of the class action were locked into perpetual, or indeterminate, franchise contracts with PG&E. Therefore, the counties had no way to terminate the existing franchises and issue new ones. They submit the Legislature was aware of this fact and enacted the amendment to remedy the disparity between city and county franchises. According to the counties, if this was not the case, the legislation would have virtually no effect.

---

[5]Section 6202 provides: "The legislative body of any municipality may grant a franchise to any person, firm, or corporation, whether operating under an existing franchise or not, to use, or to construct and use, poles, wires, conduits, and appurtenances for transmitting and distributing electricity for all purposes, or to use, or to lay and use, pipes and appurtenances for transmitting and distributing gas or industrial gas for all purposes, or to use, or to lay and use, pipes and appurtenances for transmitting and distributing oil or products thereof for all purposes, or to lay and use pipes, ditches, flumes, conduits, and appurtenances for transmitting and distributing water for all purposes, under, along, across, or upon the public streets, ways, alleys, and places within the municipality, upon the terms and conditions provided in this chapter."

[6]The counties reach this conclusion because they claim section 6201.5 was enacted in response to a request by Contra Costa County. The amicus curiae brief filed by the California State Association of Counties reaches the same conclusion because, it asserts, other utility companies in California do not have perpetual franchises. Thus, in counties such as Riverside, Nevada, San Bernadino and San Diego, where franchises expired after 1971, the utility companies agreed to the 1937 Act computation formula. According to amicus curiae, the legislative intent of section 6201.5 was to equalize the treatment of all counties and cities.

 The legislative history of Assembly Bill No. 772 (1971 Reg. Sess.), the legislation that enacted section 6201.5 in 1971, is limited.[7] The Analysis for the Assembly Committee on Local Government stated that "under the provisions of AB 772 counties would be able to grant gas, oil, water, and electric franchises *anywhere within county boundaries*." The Analysis for the Senate Local Government Committee stated: "*Proposed legislation would:* Provide that a county, as well as a municipality, may grant franchises under the Franchise Act of 1937 in any unincorporated area." Both quotations appear to contemplate future franchise grants.

 Most pertinent to our analysis is a comment in the Senate Report which provided: "While there is reportedly a question as to whether this legislation would apply to existing franchises, it would apply to all franchises hereafter granted." (Sen. Com., Rep. on Assem. Bill No. 772 (1971 Reg. Sess.) Clearly, this comment alerted the Legislature that the proposed statute was silent on the issue of existing franchises. The fact that the Legislature did nothing to change the language of the proposed statute in light of this comment indicates that no effect on existing franchises was intended. If, as the counties assert, the Legislature intended section 6201.5 to affect the existing franchises, the attempt was ineffective, as the language of the statute in no way reflects such an intent. We agree with the trial court when it stated: "If the Legislature wanted to ensure that the 1971 Amendment would affect pre-existing franchise agreements, it was up to the Legislature to make that fact clear or provide a mechanism for renegotiating new franchises under the newly applicable 1971 Amendment. The Court should not take it upon itself to apply the 1971 Amendment retroactively to pre-existing franchises where the Legislature has neither expressly nor impliedly provided for such a result."

 The counties next challenge the claim that the franchises at issue are governed exclusively by the Broughton Act. They argue that the Broughton Act scheme and 1937 Act scheme overlap.[8] They conclude that PG&E should not be permitted to obtain favorable 1937 Act benefits and still use the Broughton Act fee formula. We cannot agree.

---

[7]The counties request that we consider certain documents as part of the legislative history of section 6201.5. The first is the Contra Costa Board of Supervisors' order authorizing the county counsel to introduce through the county's legislative delegation proposed legislation. The second is a declaration by the Contra Costa County Attorney which states: "The intent [of the statute] was to change the law so that the counties would be included under the terms of the Franchise Act of 1937 and thus the franchise fees paid to the County would be subject to the minimum payments specified by the 1937 Act." The third is a letter by Assemblyman Dent, the author of Assembly Bill No. 772, written to then Governor Reagan urging the passage of the bill. None of these documents constitute admissible legislative history. (See *Bravo Vending* v. *City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 402, fn. 11 [20 Cal.Rptr.2d 164].)

[8]The counties refer to five reasons upon which a trier of fact could conclude the franchises at issue fall under the 1937 Act: 1) The franchises at issue were all awarded after 1937 when

Pursuant to statute, the Broughton Act and 1937 Act are set forth in two separate and distinct schemes. (See §§ 6001, 6204, 6261.) A franchise can be granted under the terms and procedures of either the Broughton Act or the 1937 Act, but not both. The fact that franchises granted under the Broughton Act contain similar features to franchises granted under the 1937 Act is easily explained. Section 6002, a Broughton Act statute, provides: "The grantor may, in such a franchise, impose such other and additional terms and conditions not in conflict with this article, . . ." Thus, under the Broughton Act, a county may expand the scope of its franchises as long as the expansion does not conflict with other Broughton Act provisions. Thus, a county may grant a franchise for a indeterminate term, although there is no indeterminate-term provision contained in the Broughton Act. (See *County of Kern* v. *Pacific Gas & Electric Co.* (1980) 108 Cal.App.3d 418, 425 [166 Cal.Rptr. 506].)

The counties' reliance on section 6001.5[9] to support the claim that the Broughton Act and 1937 Act overlap is unavailing. The statute obviously demonstrates that when the Legislature intends to apply a particular fee formula to particular franchises, it will do so by an express enactment which evidences its intent. If the Legislature had intended the 1971 amendment to modify preexisting Broughton Act franchises, it would have used similar explicit language to do so.

Finally, this court's decision in *Pacific Gas & Electric Co.* v. *City of San Jose* (1985) 172 Cal.App.3d 598 [218 Cal.Rptr. 400], lends no support to the counties' position. That case involved a dispute between cities, not counties. In dicta, we stated that section 6297 applied to cities and counties. (172

---

the 1937 Act was in effect. All but three of the franchises fail to mention the Broughton Act. 2) While the Broughton Act limits the scope of the franchises it authorizes to the use of electricity or gas for purposes of light, heat, or power (§ 6001), the 1937 Act authorizes, and the franchises at issue cover, electricity and gas for "all purposes." 3) The scope of the 1937 Act (see § 6202) and the franchises at issue is broader than that contained in section 6001. 4) The franchises are all for an indeterminate term. Such terms are expressly permitted under the 1937 Act (see § 6264), but not mentioned under the Broughton Act. 5) Section 6001.5, a 1989 addition to the Broughton Act, utilizes a fee provision contained in the 1937 Act.

[9]Enacted in 1989, section 6001.5 provides: "(a) All franchises, licenses, permits, or other privileges granted to a public utility by any city, county, or city and county holding a freeholder's charter, to use, or to construct, or lay and use, under, along, across, or upon the public streets, ways, alleys, and places within the municipality, facilities which are part of a pipeline system transmitting oil or products thereof, shall be granted upon the terms and conditions provided in, and in accordance with, this chapter or Chapter 2 (commencing with Section 6201). [¶] (b) It is the intent of the Legislature, in enacting this section, to preempt the ordinance of any chartered municipality insofar as that ordinance governs the granting of franchises to construct facilities which are part of a pipeline system transmitting oil or other products thereof."

Cal.App.3d at p. 601.) This was a correct statement of law, since section 6201.5 had been the law for more than a decade and new franchises may have been granted to counties under the 1937 Act.

*Prospective Effect of Section 6201.5*

In a somewhat related argument, the counties contend they are not requesting the court to give a retroactive effect to section 6201.5. Rather, they contend the enactment of the statute had a prospective effect on existing franchises. They maintain the trial court incorrectly relied on *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188 [246 Cal.Rptr. 629, 753 P.2d 585] in ruling that section 6201.5 did not apply to existing franchises. They suggest this case is governed by *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805 [258 Cal.Rptr. 161, 771 P.2d 1247]. We disagree.

As a preliminary matter we note that California courts have repeatedly rejected arguments that newly enacted franchising procedures apply to pre-existing franchises. For example, after the passage of the Broughton Act, the courts rejected arguments that the new act overrode older franchises and denied requests to permit higher Broughton Act fees. (See, e.g., *Pac. Tel. & Tel. Co.* v. *City & County of S.F.* (1959) 51 Cal.2d 766, 770-771 [336 P.2d 514]; *County of L.A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 383 [196 P.2d 773]; *County of Inyo* v. *Hess* (1921) 53 Cal.App. 415, 422 [200 P. 373].) Similarly, in *County of Kern* v. *Pacific Gas & Electric Co., supra,* 108 Cal.App.3d at pages 424-425, the court found the 1937 Act was not intended to limit the authority to issue franchises under the Broughton Act or the Government Code.

It is settled in both federal and California courts that statutes which interfere with antecedent rights will not be given a retrospective operation unless it is clear that this was the manifest intention of the Legislature. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1207.) In *Calfarm,* our Supreme Court held the nonrenewal provision of Proposition 103 (Ins. Code, § 1861.03, subd. (c)), which prohibited cancellation or nonrenewal of car insurance except in certain circumstances, applied to insurance contracts in existence when Proposition 103 was passed, even though the legislation contained no express statement on retroactivity. The high court found the legislative intent obvious from the language of the statute: "The evident purpose of the nonrenewal provision . . . mandates its application to existing policies. The provision is obviously designed to give policyholders a measure of assurance that their coverage would continue, and to prevent widespread refusals to renew in response to the initiative's enactment." (*Calfarm Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d at p. 827.)

 In contrast to the statute at issue in *Calfarm*, the intent to apply section 6201.5 to preexisting franchises is not evident from the face of the statute. As previously discussed, we find nothing in the language of the statute or in its legislative history to manifestly evidence the Legislature's intent to include the subject franchises in the statute.

*Section 453*

The counties' next argument is somewhat unclear. Citing section 453,[10] they assert that "the legislative intent that section 6201.5 applies to existing franchises is reinforced by the provisions and policy of the Public Utilities Code barring discrimination by utilities."

If the counties are asserting that the Legislature, in enacting section 6201.5, intended to serve the policies of section 453 by eliminating the disparity between franchise fees paid to counties and to cities, there is no evidence of this intention in the legislative history. On the other hand, if the counties are contending PG&E has violated section 453 by failing to pay counties and cities the same fees, they have pled no such cause of action under the statute.

In conclusion, we fail to find any evidence in the language of section 6201.5 or the legislative history of the statute which indicates the Legislature intended to make the statute applicable to franchises in existence at the time the statute was enacted. Having reached this conclusion, we need not address issues pertaining to impairment of contract rights or laches.

DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

---

[10]Section 453 states in relevant part: "(a) No public utility shall, as to rates, charges, service, facilities, or in any other respect, make or grant any preference or advantage to any corporation or person or subject any corporation or person to any prejudice or disadvantage. [¶] . . . [¶] (c) No public utility shall establish or maintain any unreasonable difference as to rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service."