[No. C053352. Third Dist. Oct. 24, 2006.]

PACIFIC GAS AND ELECTRIC COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,
Real Party in Interest.

## COUNSEL

Cassel Malm Fagundes, P. Gary Cassel and W. Jason Scott for Petitioner.

No appearance for Respondent.

Culbreth Schroeder and Eric M. Schroeder for Real Party in Interest.

## OPINION

**SIMS, Acting P. J.**—Real party in interest American Guarantee and Liability Insurance Company (American) has sued petitioner Pacific Gas and Electric Company (PG&E) in an action for property damages arising from an industrial power failure that injured its insured, Pac-West Telecomm, Inc. (Pac-West). American seeks not only to recover payments it has paid out to Pac-West, but claims it may recover its insured's $50,000 deductible although Pac-West is not a named party in this lawsuit.

The trial court denied PG&E's motion to strike the prayer for recovery of the nonparty's deductible, concluding that regulations governing the obligation of an insurer to seek recovery for an insured's deductible in a subrogation demand confers standing to sue on an insured's behalf. PG&E now seeks a writ of mandate to overturn the trial court's order denying its motion to strike the request for recovery of the deductible. We issued a *Palma* notice notifying the parties of the possibility that this court may issue a peremptory writ in the first instance, and seeking any opposition to the petition. (See

*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].) We have received opposition and a reply. We conclude that the administrative regulation relied on by American does not authorize it to recover its insured's deductible in litigation. Accordingly, we conclude the trial court abused its discretion in denying the motion to strike, and we shall issue the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

American filed a complaint for damages on March 7, 2006, alleging that PG&E was negligent in a variety of areas concerning certain power cables and equipment. A power failure and fire subsequently caused damage to electrical equipment belonging to insured Pac-West. The prayer for damages by American sought reimbursement for $64,657.46 already paid, future payments, and for Pac-West's $50,000 deductible.

PG&E moved to strike the demand for the $50,000 deductible because American did not have standing to seek recovery because Pac-West is not a party to the lawsuit. (Code Civ. Proc., § 436.)[1] American argued that California Code of Regulations, title 10, section 2695.7 (section 2695.7), conferred standing upon it to recover the deductible because it required American to seek recovery as part of its subrogation demand, in order to comply with fair settlement practices.[2]

The trial court denied the motion to strike, reasoning that section 2695.7 conferred standing on American.

---

[1] Code of Civil Procedure section 436 provides:

"The court may, upon a motion made pursuant to Section 435, or at any time in its discretion, and upon terms it deems proper:

"(a) Strike out any irrelevant, false, or improper matter inserted in any pleading.

"(b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court."

[2] Section 2695.7 provides in part: "§ 2695.7. Standards for Prompt, Fair and Equitable Settlements [¶] . . . [¶]

"(q) Every insurer that makes a *subrogation demand* shall include in every demand the first party claimant's deductible. Every insurer shall share subrogation recoveries on a proportionate basis with the first party claimant, unless the first party claimant has otherwise recovered the whole deductible amount. No insurer shall deduct legal or other expenses from the recovery of the deductible unless the insurer has retained an outside attorney or collection agency to collect that recovery. The deduction may only be for a pro rata share of the allocated loss adjustment expense. This subsection shall not apply when multiple policies have been issued to the insured(s) covering the same loss and the language of these contracts prescribe alternative subrogation rights. Further, this subsection shall not apply to disability and health insurance as defined in California Insurance Code Section 106." (§ 2695.7, subd. (q), italics added.)

## DISCUSSION

### I. *Standard of Review*

A motion to strike a pleading under Code of Civil Procedure section 436 is reviewed for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 [107 Cal.Rptr.2d 489].) "The scope of discretion always resides in the particular law being applied; action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an abuse of discretion." (*Choice-in-Education League v. Los Angeles Unified School Dist.* (1993) 17 Cal.App.4th 415, 422 [21 Cal.Rptr.2d 303].)

### II. *Insurers Do Not Have Standing to Recover an Insured's Unpaid Deductible in a Subrogation Lawsuit*

Standing in a lawsuit is governed by Code of Civil Procedure section 367, which provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."

It is well settled that, pursuant to principles of equitable subrogation, an insured retains a right to sue for uncompensated loss. "Subrogation is the right of an insurer to take the place of its insured to pursue recovery from legally responsible third parties for losses *paid to the insured* by the insurer. [Citation.]" (*Kardly v. State Farm Mut. Auto. Ins. Co.* (1989) 207 Cal.App.3d 479, 488 [255 Cal.Rptr. 40], italics added.) "Both the subrogee (insurer) and the subrogor (insured) have a right of action against the tortfeasor."[3] (*Basin Construction Corp. v. Department of Water & Power* (1988) 199 Cal.App.3d 819, 825 [245 Cal.Rptr. 178].)

Subrogation "can also arise out of the contractual language of the insurance policy (conventional subrogation)." (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 272 [37 Cal.Rptr.3d 434].) However, American has not pled that its insurance policy allows it to recover its insured's deductible, and it makes no such claim in this court.

American claims it became "subrogated to all PAC-WEST's [*sic*] rights and remedies against all those responsible for this loss." However, it admits

---

[3] There is nothing in the record that explains why Pac-West is not a party to this suit or why American is pursuing this deductible. The insurance contract between them is not in the record, and there is no evidence of an assigned claim.

that "this loss" is only the $64,657.46 it has actually paid to Pac-West to date, and deducting the $50,000 deductible from the gross claim of $111,657.46. Hence, under the general law of subrogation, American has a right to sue only for its subrogated loss, i.e., what it paid its insured.

### III. *The California Fair Claims Settlement Practices Regulations Govern the Settlement of Insurance Claims*

█ American premises its entire argument that it has standing to sue for the deductible upon subdivision (q) of section 2695.7. (See fn. 22, *ante.*) We disagree. As we shall explain, this regulation governs the conduct of insurers in the settlement of claims, not the pursuit of litigation.

█ "We construe statutes and regulations in a manner that carries out the legislative or regulatory intent. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) We must ' "ascertain the intent of the [drafters] so as to effectuate the purpose" ' of the regulations. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The words used are the primary source for identifying the drafter's intent. (*Ibid.*) We give those words their usual and ordinary meaning where possible. (Code Civ. Proc., § 1858; *Trope, supra,* 11 Cal.4th at p. 280.) We give significance to every word, avoiding an interpretation that renders any word surplusage. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798–799 [268 Cal.Rptr. 753, 789 P.2d 934].) We also interpret the words of a regulation in context, harmonizing to the extent possible all provisions relating to the same subject matter. (*County of Alameda v. Pacific Gas & Electric Co.* (1997) 51 Cal.App.4th 1691, 1698 [60 Cal.Rptr.2d 187].)" (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1505–1506 [1 Cal.Rptr.3d 207].)

We begin with the regulatory context in which section 2695.7 appears.

Section 2695.7 is part of a larger regulatory scheme designed to curtail unfair business practices in the insurance business enumerated in Insurance Code section 790.03, subdivision (h). Section 2695.7 is a part of article 1 of chapter 7.5 of title 10 of the California Code of Regulations. The "preamble" to article 1 is found in section 2695.1 of title 10 as follows:

"(a) Section 790.03(h) of the California Insurance Code enumerates sixteen *claims settlement practices* that, when either knowingly committed on a

single occasion, or performed with such frequency as to indicate a general business practice, are considered to be unfair *claims settlement practices* and are, thus, prohibited by this section of the California Insurance Code. The Insurance Commissioner has promulgated these regulations in order to accomplish the following objectives:

"(1) To delineate certain minimum standards for *the settlement of claims* which, when violated knowingly on a single occasion or performed with such frequency as to indicate a general business practice shall constitute an unfair *claims settlement practice* within the meaning of Insurance Code Section 790.03(h);

"(2) To promote the good faith, prompt, efficient and equitable *settlement of claims* on a cost effective basis;

"(3) To discourage and monitor the presentation to insurers of false or fraudulent *claims*; and,

"(4) To encourage the prompt and thorough investigation of suspected fraudulent *claims* and ensure the prompt and comprehensive reporting of suspected fraudulent claims as required by Insurance Code Section 1872.4." (§ 2695.7, italics added.)

This "preamble" leaves no doubt that the regulations to which it refers (including section 2695.7) concern the settlement of claims, not the pursuit of claims in litigation. This conclusion is bolstered by a reading of section 2695.7 in its entirety.[4] Section 2695.7 is entitled, "Standards for Prompt, Fair and Equitable *Settlements*." (Italics added.) The numerous references in section 2695.7 to the settlement of claims (see appen., *post*, at p. 28) leave no doubt that the aim of section 2695.7 is to govern the settlement of claims, not the pursuit of litigation.

■ American focuses on the use of the term "subrogation demand" in section 2695.7, subdivision (q). Contrary to American's argument, the plain meaning of the term "subrogation demand" in this administrative regulation does not contradict standing and subrogation law. It addresses another subject entirely—the settlement of claims and the pursuit of a subrogation claim

---

[4] Section 2695.7 is found at the appendix, *post*, at page 28.

short of litigation. Thus, in ordinary parlance, a "demand" is something that occurs short of litigation. Indeed, it is the refusal of a "demand" that may trigger litigation. The plain meaning of this phrase in context is that an insurer seeking settlement from a tortfeasor must seek recovery of its insured's deductible. However, a "subrogation demand" in a settlement context is not the same as standing to sue in litigation. A "subrogation demand" does not authorize substitution of one party for the lawful party in a lawsuit.

### IV. *Section 2695.7 Should Not Be Liberally Construed*

American's alternative argument is that the term "subrogation demand" in section 2695.7, subdivision (q), should be "liberal[ly]" interpreted by this court to facilitate the "legislative intent" to permit recovery of an insured's deductible in an efficient and economical procedure.

American relies upon *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 680 [38 Cal.Rptr.3d 36], which interpreted a statute requiring liberal construction of the Consumer Legal Remedies Act as a whole, a completely irrelevant holding.

American's argument fails.

First, as we have shown, the language and context of section 2695.7 demonstrate it applies to the settlement of claims. We have no warrant to adopt a "liberal" interpretation of the regulation that would reach a contrary conclusion.

Second, we decline real party's alternative invitation to adopt its notions of public policy and judicial economy to confer standing upon an insurer to seek its nonparty insured's deductible in a lawsuit. This is an argument that is better "resolved on the other side of Tenth Street, in the halls of the Legislature." (*Osborn v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 711 [252 Cal.Rptr. 613].)

From the foregoing it appears that a writ should issue.

## DISPOSITION

We have complied with the procedural prerequisites to the issuance of a peremptory writ of mandate in the first instance, as described in *Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying petitioner's motion to strike, and to enter a new order granting petitioner's motion to strike. Petitioner shall recover its costs.

Davis, J., and Hull, J., concurred.

# APPENDIX

California Code of Regulations, title 10, section 2695.7 provides in its entirety:

"2695.7. Standards for Prompt, Fair and Equitable Settlements.

"(a) No insurer shall discriminate in its *claims settlement practices* based upon the claimant's age, race, gender, income, religion, language, sexual orientation, ancestry, national origin, or physical disability, or upon the territory of the property or person insured.

"(b) Upon receiving *proof of claim*, every insurer, except as specified in subsection 2695.7(b)(4) below, shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety.

"(1) Where *an insurer denies or rejects a first party claim*, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a *first party claim*, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim. Every insurer that denies or rejects a *third party claim*, in whole or in part, or disputes liability or damages shall do so in writing.

"(2) Subject to the provisions of subsection 2695.7(k), nothing contained in subsection 2695.7(b)(1) shall require an insurer to disclose any information that could reasonably be expected to alert a claimant to the fact that *the subject claim* is being investigated as a suspected fraudulent claim.

"(3) Written notification pursuant to this subsection shall include a statement that, if the claimant believes all or part of the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the California Department of Insurance, and shall include the address and telephone number of the unit of the Department which reviews *claims practices*.

"(4) The time frame in subsection 2695.7(b) shall not apply to *claims arising* from policies of disability insurance subject to Section 10123.13 of the California Insurance Code, disability income insurance subject to Section

10111.2 of the California Insurance Code or mortgage guaranty insurance subject to Section 12640.09(a) of the California Insurance Code, and shall not apply to automobile repair bills arising from policies of automobile collision and comprehensive insurance subject to Section 560 of the California Insurance Code. All other provisions of subsections 2695.7(b)(1), (2), and (3) are applicable.

"(c)(1) If more time is required than is allotted in subsection 2695.7(b) to determine *whether a claim should be accepted and/or denied* in whole or in part, every insurer shall provide the claimant, within the time frame specified in subsection 2695.7(b), with written notice of the need for additional time. This written notice shall specify any additional information the insurer requires in order to make a determination and state any continuing reasons for the insurer's inability to make a determination. Thereafter, the written notice shall be provided every thirty (30) calendar days until a determination is made or notice of legal action is served. If the determination cannot be made until some future event occurs, then the insurer shall comply with this continuing notice requirement by advising *the claimant* of the situation and providing an estimate as to when the determination can be made.

"(2) Subject to the provisions of subsection 2695.7(k), nothing contained in subsection 2695.7(c)(1) shall require an insurer to disclose any information that could reasonably be expected to alert a *claimant* to the fact that the *claim is being investigated* as a possible suspected fraudulent claim.

"(d) Every insurer shall conduct and diligently pursue a thorough, fair and objective investigation and shall not persist in seeking information not reasonably required for or material to the *resolution of a claim dispute*.

"(e) No insurer shall delay or deny *settlement of a first party claim* on the basis that responsibility for payment should be assumed by others, except as may otherwise be provided by policy provisions, statutes or regulations, including those pertaining to coordination of benefits.

"(f) Except where *a claim has been settled* by payment, every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to *deny a claim*. Such notice shall be given to *the claimant* not less than sixty (60) days prior to the expiration date; except, if *notice of claim* is first received by the insurer within that sixty days, then notice of the expiration date must be given to *the claimant* immediately. With respect to a *first party claimant* in a matter involving an uninsured motorist, this notice shall be given at least thirty (30) days prior to the expiration date; except, if notice of claim is first received by the insurer within that thirty days, then notice of the expiration date must be

given to *the claimant* immediately. This subsection shall not apply to *a claimant* represented by counsel on the claim matter.

"(g) No insurer shall attempt to *settle a claim* by making a settlement offer that is unreasonably low. The Commissioner shall consider any admissible evidence offered regarding the following factors in determining whether or not a *settlement offer* is unreasonably low:

"(1) the extent to which the insurer considered evidence submitted by *the claimant* to support the value of *the claim*;

"(2) the extent to which the insurer considered legal authority or evidence made known to it or reasonably available;

"(3) the extent to which the insurer considered the advice of its claims adjuster as to the amount of damages;

"(4) the extent to which the insurer considered the advice of its counsel that there was a substantial likelihood of recovery in excess of policy limits;

"(5) the procedures used by the insurer in determining the dollar amount of property damage;

"(6) the extent to which the insurer considered the probable liability of the insured and the likely jury verdict or other final determination of the matter;

"(7) any other credible evidence presented to the Commissioner that demonstrates that (i) any amount offered by the insurer in settlement of a first-party *claim* to an insured not represented by counsel, or (ii) the final amount offered in settlement of a first-party *claim* to an insured who is represented by counsel or (iii) the final amount offered in settlement of a third party *claim* by the insurer is below the amount that a reasonable person with knowledge of the facts and circumstances would have offered in settlement of *the claim*.

"(h) Upon acceptance of *the claim* in whole or in part and, when necessary, upon receipt of a properly executed release, every insurer, except as specified in subsection 2695.7(h)(1) and (2) below, shall immediately, but in no event more than thirty (30) calendar days later, tender payment or otherwise take action to perform *its claim obligation*. The amount of *the claim* to be tendered is the amount that has been accepted by the insurer as specified in subsection 2695.7(b). In *claims* where multiple coverage is involved, and where the payee is known, amounts that have been accepted by the insurer shall be paid immediately, but in no event more than thirty (30) calendar

days, if payment would terminate the insurer's known liability under that individual coverage, unless impairment of the insured's interests would result. The time frames specified in this subsection shall not apply where the policy provides for a waiting period after acceptance of claim and before payment of benefits.

"(1) The time frame specified in subsection 2695.7(h) shall not apply to *claims* arising from policies of disability insurance subject to Section 10123.13 of the California Insurance Code, disability income insurance subject to Section 10111.2 of the California Insurance Code, or of mortgage guaranty insurance subject to Section 12640.09(a) of the California Insurance Code, and shall not apply to automobile repair bills subject to Section 560 of the California Insurance Code. All other provisions of Section 2695.7(h) are applicable.

"(2) Any insurer issuing a title insurance policy shall either tender payment pursuant to subsection 2695.7(h) or take action to resolve the problem which gave rise to *the claim* immediately upon, but in no event more than thirty (30) calendar days after, acceptance of *the claim.*

"(i) No insurer shall inform *a claimant* that his or her rights may be impaired if a form or release is not completed within a specified time period unless the information is given for the purpose of notifying *the claimant* of any applicable statute of limitations or policy provision or the time limitation within which *claims* are required to be brought against state or local entities.

"(j) No insurer shall request or require an insured to submit to a polygraph examination unless authorized under the applicable insurance contract and state law.

"(k) Subject to the provisions of subsection 2695.7(c), where there is a reasonable basis, supported by specific information available for review by the California Department of Insurance, for the belief that *the claimant* has submitted or caused to be submitted to an insurer a suspected *false or fraudulent claim* as specified in California Penal Code Section 550 or California Insurance Code Section 1871.4(a), the number of calendar days specified in subsection 2695.7(b) shall be:

"(1) increased to eighty (80) calendar days; or,

"(2) suspended until otherwise ordered by the Commissioner, provided the insurer has complied with California Insurance Code Section 1872.4 and the insurer can demonstrate to the Commissioner that it has made a diligent attempt to determine whether *the subject claim* is false or fraudulent within the eighty day period specified by subsection 2695.7(k)(1).

"(*l*) No insurer shall *deny a claim* based upon information obtained in a telephone conversation or personal interview with any source unless the telephone conversation or personal interview is documented in the claim file pursuant to the provisions of Section 2695.3.

"(m) No insurer shall make a payment to a provider, pursuant to a policy provision to pay medical benefits, and thereafter seek recovery or set-off from the insured on the basis that the amount was excessive and/or the services were unnecessary, except in the event of a proven false or fraudulent claim, subject to the provisions of Section 10123.145 of the California Insurance Code.

"(n) Every insurer requesting a medical examination for the purpose of determining liability under a policy provision shall do so only when the insurer has a good faith belief that such an examination is reasonably necessary.

"(o) No insurer shall require that *a claimant* withdraw, rescind or refrain from submitting any complaint to the California Department of Insurance regarding the handling of a claim or any other matter complained of as a condition precedent to the *settlement of any claim.*

"(p) Every insurer shall provide written notification to a *first party claimant* as to whether the insurer intends to pursue subrogation of the claim. Where an insurer elects not to pursue subrogation, or discontinues pursuit of subrogation, it shall include in its notification a statement that any recovery to be pursued is the responsibility of the *first party claimant.* This subsection does not require notification if the deductible is waived, the coverage under which *the claim* is paid requires no deductible to be paid, the loss sustained does not exceed the applicable deductible, or there is no legal basis for subrogation.

"(q) Every insurer that makes a subrogation demand shall include in every demand the *first party claimant's* deductible. Every insurer shall share subrogation recoveries on a proportionate basis with the *first party claimant,* unless the *first party claimant* has otherwise recovered the whole deductible amount. No insurer shall deduct legal or other expenses from the recovery of the deductible unless the insurer has retained an outside attorney or collection agency to collect that recovery. The deduction may only be for a pro rata share of the allocated loss adjustment expense. This subsection shall not apply when multiple policies have been issued to the insured(s) covering the same loss and the language of these contracts prescribe alternative subroga-tion rights. Further, this subsection shall not apply to disability and health insurance as defined in California Insurance Code Section 106." (Cal. Code Regs., tit. 10, § 2695.7, italics added.)