[No. H007866. Sixth Dist. Sept. 22, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS DEVANA McCOY, Defendant and Appellant

**COUNSEL**

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

### COTTLE, Acting P. J.—

#### I.

#### Introduction

Defendant Dennis Devana McCoy was charged by information with three counts of violating a child custody order (Pen. Code, § 278.5).[1] ██ Representing himself, defendant waived jury trial, stipulated to certain facts, and submitted his case on the preliminary hearing transcript and the stipulated facts pursuant to *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086].[2] The trial court suspended imposition of sentence and placed defendant on probation for five years upon condition, inter alia, that he serve one year in county jail. In his briefs defendant contends two of his convictions must be reversed because "he engaged in only one criminal act." (Capitalization omitted.) ██ ██ He also claims his *Bunnell* submission was invalid because it was based on "a serious misapprehension of the value of the inducement offered by the court and the prosecutor" (capitalization omitted), the trial court failed to honor his rejection of probation, and his waiver of his right to counsel was involuntary because the court erroneously denied his repeated requests to replace the public defender.[3]

#### II.

#### Facts

Defendant and Nannietta McCoy married November 9, 1974. They separated August 29, 1981. At that time, they had three minor children, Meagan

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] A *Bunnell* submission, or "slow plea," is a bargained-for submission to the court on the preliminary hearing transcript, unaccompanied by defendant's testimony or argument of counsel. (See *Bunnell* v. *Superior Court, supra,* 13 Cal.3d 592; *People* v. *Wright* (1987) 43 Cal.3d 487, 495 [233 Cal.Rptr. 69, 729 P.2d 260]; *People* v. *Huynh* (1991) 229 Cal.App.3d 1067, 1078 [280 Cal.Rptr. 506].)

[3] As this opinion was being prepared for publication, this court received notice of McCoy's death. Despite this development, we do not find some of the issues presented by this appeal moot. "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Arias* (1986) 42 Cal.3d 667, 673, fn. 1 [230 Cal.Rptr. 505, 725 P.2d 664].) We choose to address the issues raised herein which pose an issue of broad public interest; the issues not addressed in this opinion are deemed moot.

Joann, Brennan, and Breanna Colleen. They litigated custody of their children in Santa Clara Superior Court. By an order in October 1981,[4] the court granted defendant temporary custody of the couple's son and granted Nannietta temporary custody of both daughters. Reciprocal visitation rights were granted on April 5, 1982. Nannietta visited Brennan on alternate weekends.

Sometime prior to the week ending April 2, 1982, defendant called Nannietta in Santa Clara County and arranged for her to bring the three children on April 7th to the Santa Rosa home of Cindy Guinn, a friend of defendant's. Nannietta, who had all three of her children at that point because it was Easter vacation, took the children to Guinn's house, where defendant picked them up. Pursuant to the court order, defendant was to return the girls to Nannietta's custody on April 11th and was to return Brennan to Nannietta for visitation on April 18th.

Defendant did not fulfill his obligations under either the custody or visitation orders but instead disappeared with the three children shortly after picking them up from Guinn's home. Defendant did not tell Nannietta he was absconding with the children nor did he have her permission to take them away.[5]

Nannietta hired an investigator to locate defendant and the children. The next time Nannietta saw her children was in Gainsville, Florida on October 13, 1982. Defendant was arrested in Florida and returned to California. During the six months defendant had the children in Florida and Nannietta was denied her custodial and visitation rights, Nannietta continued to reside in Santa Clara County.

### III.

### DISCUSSION

#### A. *Single Criminal Act*

■ In the briefs filed in conjunction with this appeal, defendant contended that he cannot stand convicted of three violations of section 278.5 because he engaged in only one criminal act. At oral argument defense counsel indicated that he was "abandoning the argument that [defendant]

---

[4]The date of the order referred to at the preliminary hearing was October 19, 1981, whereas the date of the order to which defendant stipulated was October 23, 1981.

[5]Defendant signed and notarized a document in which he gave Nannietta permission to remove the children from the country for five years. He then altered the document so it appeared Nannietta gave him permission to remove the children. Nannietta did not give defendant permission to execute this document nor did she ever discuss the subject with him.

could not suffer multiple convictions." We simply note that abandonment of this contention at argument was appropriate, given that defendant was properly convicted of three crimes.

At the time defendant violated the relevant child custody orders, section 278.5 provided in pertinent part: "[E]very person who has custody of a child pursuant to an order, judgment or decree of any court which grants another person rights to custody or visitation of such child, and who detains or conceals such child with the intent to deprive the other person of such right to custody or visitation shall be punished by imprisonment in the state prison for a period of not more than one year and one day . . . ."

"[A] charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once." (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 349 [211 Cal.Rptr. 742, 696 P.2d 134].) The "actus reus" of the instant offense is detaining or concealing a child in violation or a court order which grants rights to custody or visitation of such child. Here, separately considered orders were made and existed as to each of the three children. In fact, California law requires the court to individually assess each child's best interests in fashioning such orders. (See Civ. Code, §§ 4600, 4601, 4608.) In this case, the court granted Nannietta custody of Meagan Joann and made a similar order granting Nannietta custody of Breanna Colleen. The court made a separate order granting defendant custody of Brennan. The court made additional orders granting Nannietta visitation rights regarding Brennan and orders granting defendant visitation rights to his two daughters.[6] Defendant's absconding with the three children violated three separate court orders, namely two custody orders as to his daughters and a visitation order as to his son.

B. *Validity of the Bunnell Submission/Application of Section 654 to Section 278.5*

■ Defendant contends his waiver of constitutional rights pursuant to the *Bunnell* submission was invalid because "it was based on a serious misapprehension of the value of the inducement offered by the court and the prosecutor." (Capitalization omitted.) Underlying this contention is defendant's belief that section 654 prohibits imposition of consecutive terms for his three violations of section 278.5. We conclude section 654 does not preclude

---

[6]The visitation orders appear to have been issued after the custody orders. In determining the number of criminal acts, we find it irrelevant whether the orders concerning the children were issued on one piece of paper or on several papers, whether one person, in this case, Nannietta, was the direct "victim" of each crime, or whether defendant made only one trip to Florida.

imposition of multiple sentences for the offenses committed by defendant and that, therefore, the *Bunnell* submission was valid.

Following "extensive discussions" between the court, the prosecutor and defendant, defendant decided to resolve the matter via a *Bunnell* submission rather than a jury trial. Before defendant agreed to submit the case pursuant to *Bunnell*, he was told the court would find him guilty of the three counts in the information, that he faced a possible punishment of "commitment to state prison for a maximum term of three years and three days," and that pursuant to the plea bargain, the maximum term the court actually would impose would be "one year and one day, which would mean the three counts would run concurrent to each other." The court then asked defendant if there had been any other inducements or promises "aside from" the promise that defendant "could not be subjected to a consecutive term" "to make [him] give up [his] right to a jury trial and proceed in this fashion." Defendant answered no and then waived his right to a jury trial, his right to cross-examine witnesses, his right to present witnesses, his right to testify, and his right against self-incrimination. As noted above, defendant claims the promise was "value[less]" because whether or not he had refused to give up his rights, section 654 would have prohibited consecutive sentencing.

It is undisputed that, shortly after defendant picked up his three children from a location in Santa Rosa where his wife had left them, he disappeared with all three children.

In arguing that he cannot be punished "three times for his involvement in this single transaction," defendant relies upon the portion of section 654 which provides that "[a]n act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one."

■ The statute is intended to ensure that defendant receives punishment "commensurate with his culpability." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) Generally, this proscription against multiple punishment is applicable "where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.]" (*People* v. *Perez, supra,* 23 Cal.3d at p. 551.)[7] In arguing that defendant's acts constitute an indivisible transaction, defense counsel claims that "it's a time issue." However, "[i]t is defendant's

---

[7]Defendant's reliance on *Wilkoff* v. *Superior Court, supra,* 38 Cal.3d 345, with regard to his section 654 argument, is to no avail. While the court in *Wilkoff* ruled that a single instance of

intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.][¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.] Although the question of whether defendant harbored a 'single intent' within the meaning of section 654 is generally a factual one, the applicability of the statute to conceded facts is a question of law. [Citation.]" (*People v. Harrison, supra,* 48 Cal.3d at p. 335; see also *People v. Ordonez* (1991) 226 Cal.App.3d 1207, 1239 [277 Cal.Rptr. 382].)

The factual finding of the trial court, whether explicit or implicit, may not be reversed "if there is any substantial evidence to support it." (*People v. Porter* (1987) 194 Cal.App.3d 34, 38 [239 Cal.Rptr. 269]; *People v. Panky* (1978) 82 Cal.App.3d 772, 782 [147 Cal.Rptr. 341].) We conclude that substantial evidence supports the implicit finding of the trial court that defendant "entertained multiple criminal objectives which were independent of and not merely incidental to each other . . . ." (*People v. Perez, supra,* 23 Cal.3d at p. 551.)

In this case, defendant intended to deprive his wife of her custodial rights to their daughters Meagan Joann and Breanna Colleen and of her visitation rights to their son Brennan. The violations concerning each daughter were complete as of April 11, 1982, whereas the violation concerning Brennan did not occur until April 18, 1982.

We find defendant's characterization of his crimes as having a single objective of "having sole custody of his children because he believed they were better off with him than with his wife" too broad. Similarly, in holding

driving while intoxicated which causes injury to several people is chargeable as only one count, we have determined, under the circumstances of this case, that the actus reus prohibited by section 278.5 was committed more than once, and defendant has conceded that point. Defendant's reliance on our opinion in *People v. Ramirez* (1992) 6 Cal.App.4th 1762 [8 Cal.Rptr.2d 624] is similarly misplaced. Defendant in that case relied upon *Wilkoff* to contend that "he may be charged and convicted of only one count of exploding a dangerous device with intent to commit murder." (*Id.,* at p. 1764.) In so doing, he "specifically disclaim[ed] section 654 as a basis for [his] appeal . . . [and] insist[ed] his contention 'involves a question of determining the allowable "unit of prosecution." [Citation.]' " (*Id.,* at p. 1765.)

section 654 did not preclude consecutive punishment of three violations of penetration by a foreign object (§ 289, subd. (a)) committed during a single course of conduct against a single victim, the court in *Harrison* found that with regard to sex crimes, the single " 'intent and objective of obtaining sexual gratification' " was overbroad. (48 Cal.3d at p. 335.) Here, as in *Harrison,* "such a 'broad and amorphous' view of the single 'intent' or 'objective' needed to trigger the statute would impermissibly 'reward the defendant who has the greater criminal ambition with a lesser punishment.' " (*Id.,* at pp. 335-336.) Although defendant's absconding with his three children, as opposed to one or two, may have entailed some common acts, taking one was not incidental to taking either of the others. "The fact that [the three] violations share common acts or were simultaneously committed is not determinative. [Citation.]" (*People* v. *Coleman* (1973) 32 Cal.App.3d 853, 858 [283 Cal.Rptr. 441].) Defendant harbored three separate criminal objectives which were independent and not merely incidental to each other. His intent to violate the custody agreements as to Meagan Joann and Breanna Colleen and to violate the visitation agreement as to Brennan was personal to each child. In *Harrison's* words, defendant's "criminal ambition" in taking all three children was greater than had he taken only one or two. (48 Cal.3d at p. 336.)

Defendant's analogy to theft cases, in which a defendant "commits only one robbery or theft notwithstanding the number of items he steals" (*People* v. *Brito* (1991) 232 Cal.App.3d 316, 326, fn. 8 [283 Cal.Rptr. 441]), is flawed. The inanimate objects which are the subject of property theft bear no resemblance to children who are taken from one of their parents in violation of court orders. As compared with a property crime, defendant's violation of the court orders caused a detrimental effect on three individual children for a significant period of time and repeatedly violated their mother's parental rights. Child stealing laws are in part designed to "protect parents against the anxiety and grief which necessarily follow from the taking of their children." (*People* v. *Campos* (1982) 131 Cal.App.3d 894, 899 [182 Cal.Rptr. 698].) In depriving his wife of her custodial/visitation rights to all three of her children, defendant acted more culpably than had he deprived his wife of her rights to one of the children. Furthermore, although the custodial parent is technically the "victim" in child stealing actions (*ibid.*), the children also are victimized, given that the purposes of section 278.5 include " 'protect[ing] children from the extralegal hazards of custody disputes.' " (*People* v. *Lortz* (1982) 137 Cal.App.3d 363, 368 [187 Cal.Rptr. 89].) Custody and visitation rights, "although technically awarded by a court to a parent . . . belong equally to the children"; a parent who arbitrarily denies those rights "is

cruelly inflicting incalculable damage to the children's welfare." (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 658 [165 Cal.Rptr. 877, 612 P.2d 967].)[8] The impact of defendant's actions on each of his children further demonstrates that his conduct was more culpable than a single violation of a visitation or custody order as to one child. The crimes, though committed in temporal proximity, were independent of each other. (See, e.g., *People* v. *Mixon* (1990) 225 Cal.App.3d 1471, 1487 [275 Cal.Rptr. 817].) Section 654 does not bar multiple punishment for the multiple violations of section 278.5 which defendant committed. Defendant's contention to the contrary, the court's agreement to impose concurrent sentences was not "a meaningless promise," and the *Bunnell* submission induced by that promise is valid.

## IV.

### DISPOSITION

The court having received and filed a certified copy of a certificate evidencing the death of defendant Dennis Devana McCoy during the pendency of this appeal, all proceedings in the cause have permanently abated. The superior court is directed to enter an order to that effect. (See *In re Jackson* (1985) 39 Cal.3d 464, 480 [216 Cal.Rptr. 760, 703 P.2d 100].)

Bamattre-Manoukian, J., and O'Farrell, J.,* concurred.

---

[8]At oral argument, defense counsel reluctantly conceded that when a parent violates child custody and/or visitation orders "the children are victimized."

*Judge of the Monterey Superior Court sitting under assignment by the Chairperson of the Judicial Council.