[No. B176350. Second Dist., Div. One. June 28, 2005.]

ROBERT BISNO, Plaintiff and Appellant, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Respondent.

COUNSEL

Irell & Manella, Allan J. Abshez, Wendy Marantz Levine and Francesco R. Barbera for Plaintiff and Appellant.

Doris M. Ganga and Michaelyn Jones for Defendant and Respondent.

OPINION

**SPENCER, P. J.—**

## INTRODUCTION

Plaintiff Robert Bisno appeals from a judgment declaring valid defendant Santa Monica Rent Control Board's (Board) "Regulation 3304," which permits landlords to petition for a rent increase on the ground that a rental unit's tenant is not occupying it as his or her principal residence. The primary task before us is to determine whether the Board exceeded its authority in adopting Regulation 3304, thus rendering it void. We hold that the Board did not exceed its authority and that Regulation 3304 does not suffer from any other fatal infirmity. We consequently affirm the judgment.

## STATUTORY AND REGULATORY FRAMEWORK

In 1979, the City of Santa Monica adopted the Rent Control Charter Amendment, which added article XVIII, the Rent Control Law (RCL), and created the Board to regulate rentals. The stated purposes of the RCL are to

alleviate the hardship caused by a serious housing shortage and to provide tenants with a reasonable degree of protection. The RCL achieves these aims by ensuring that landlords receive no more than a fair, or reasonable, return on their investment, thus avoiding the unreasonable escalation of rents, by controlling the removal of rental units subject to the RCL from the housing market and by requiring just cause for eviction. (RCL, § 1800.) The purposes of 1984 and 2002 amendments to the RCL are to enable the Board to afford relief to those individuals facing particular hardship and to protect and increase the affordable housing supply in the city. (*Ibid.*)

With the exception of six specified categories for which landlords may seek exemption, all residential rental units in the city are subject to the RCL. (RCL, § 1801(c).) The term "tenant" means "[a] tenant, subtenant, lessee, sublessee or any other person entitled under the terms of a rental housing agreement to the use or occupancy of any rental unit." (*Id.*, § 1801(i).)

The Board may set rent ceilings for and require the registration of all controlled units, establish a base ceiling on rents, make adjustments to the ceiling, set rents at fair and equitable levels to fulfill the purpose of the RCL, and remove rent controls. (RCL, § 1803(f).) The Board may issue rules and regulations that further the purposes of the RCL.

The Board must hold at least one public hearing to consider interested parties' viewpoints before making general adjustments regarding decontrol or recontrol of any class of rental units. (RCL, § 1803(g).) The Board may decontrol a rental unit class, category or area if the vacancy rate exceeds 5 percent. (*Id.*, § 1803(r).) A landlord must secure Board approval before removing a controlled rental unit from the market. (*Id.*, § 1803(t).)

The Board has the power, after holding public hearings, to adjust the rent ceiling for all controlled units or for specific categories of units. (RCL, § 1805(a).) The Board must make general annual adjustments to rents to reflect increases or decreases in city taxes, increases in utility fees and actual increases in maintenance costs. (*Id.*, § 1805(b).) The Board also may entertain landlord or tenant petitions for rent ceiling adjustments. (*Id.*, § 1805(c).)

The Board must consider the purposes of the RCL, as well as other legal requirements, when it makes general or individual rent ceiling adjustments. While the Board may adopt "any lawful formula" as its fair return standard, it must consider all relevant factors. These include "increases or decreases in operating and maintenance expenses, the extent of utilities paid by the

landlord, necessary and reasonable capital improvement of the controlled rental unit as distinguished from normal repair, replacement and maintenance, increases or decreases in living space, furniture, furnishings, equipment, or services, substantial deterioration of the controlled rental unit other than as a result of ordinary wear and tear, failure on the part of the landlord to provide adequate housing services or to comply substantially with applicable housing, health and safety codes, Federal and State income tax benefits, the speculative nature of the investment, whether or not the property was acquired or is held as a long term or short term investment, the landlord's rate of return on investment, the landlord's current and base date Net Operating Income, and any other factor deemed relevant by the Board in providing the landlord a fair return." (RCL, § 1805(e).)

The Board may not increase a rent ceiling because the landlord has a reasonably foreseeable negative cash flow. (RCL, § 1805(f), (g).) It must not increase rent if the landlord has not complied substantially with applicable state and local law or the provisions of the RCL. (*Id.*, § 1805(h).) The Board has the discretion to enact regulations that allow rent ceiling increases when a tenant voluntarily leaves a rental unit in a property that participates in a low income housing program. (*Id.*, § 1805(i).)

The Board adopted regulations governing the determination of a landlord's fair return on investment. As pertinent here, these regulations define "Net Operating Income" in great detail, delineate precisely those operating expenses which are allowable or not allowable, create a rebuttable presumption that Net Operating Income provided a fair return on the landlord's investment, and specify those conditions which rebut the presumption. (Santa Monica Rent Control Bd., regs. 4101–4103.) The regulations also permit cost of living increases in rents which raise a landlord's Net Operating Income by 40 percent of the consumer price index. (*Id.*, reg. 4106.)

In the past, the Board also has adopted regulations governing annual general adjustments and categorical adjustments. These address increases in tax liability (Santa Monica Rent Control Bd., regs. 3102–3107), utility fees (*id.*, regs. 3007–3008, 3013), the cost of living (*id.*, regs. 3000, 3002–3025) and such expenses as the installation of smoke detectors or residential street lighting (*id.*, regs. 3100, 3101).

In February 2003, the Board adopted Regulation 3304. It permits a landlord to petition the Board for a determination that a rental unit is not the tenant's principal residence and the tenant therefore is a " 'tenant not in occupancy.' " In that circumstance, the landlord may increase the maximum

allowable rent to the comparable market-rate vacancy increase allowable under the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.), if that can be determined, or otherwise the median rent for comparable units in the area, subject to certain adjustments. Regulation 3304 makes certain exceptions where reasonable, such as for students or visiting faculty at institutions of higher education. It also permits the consideration of individual circumstances. This prevents its use to unjustly deprive a person faced with a temporary but prolonged medical urgency or some similar situation of the protections of the RCL.

## FACTS

Plaintiff and his wife rented their apartment at The Shores in 1996. Plaintiff's landlord, Douglas, Emmett & Co., was a primary proponent of Regulation 3304. After its adoption, Douglas, Emmett & Co. petitioned for an increase in the maximum allowable rent on the sole ground that plaintiff's apartment at The Shores was not his principal residence.

The Board held a hearing on May 28, 2003, during which it received evidence concerning plaintiff's marital separation and living arrangements and the results of an investigator's inspections of the apartment's medicine cabinet, refrigerator, kitchen cabinets and bedroom closets. On August 1, 2003, the Board's hearing officer authorized an increase in plaintiff's rent. Douglas, Emmett & Co. raised the rent from $1,111 to $4,295 per month. Plaintiff appealed to the entire Board. Following a postappeal hearing on October 26, 2004, the Board's hearing officer set the maximum allowable rent at $4,045 per month.

## DISCUSSION

■ When determining whether a regulation comes within the scope of the authority a legislative body has delegated to an administrative agency, we do not defer to the agency's interpretation of the enabling statute but instead exercise our independent judgment. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, fn. 4 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) An administrative agency may not adopt a regulation that exceeds the scope of, or is inconsistent with, the enabling statute. (*Ramirez v. Yosemite Water Company, Inc.* (1999) 20 Cal.4th 785, 800 [85 Cal.Rptr.2d 844, 978 P.2d 2]; *Yamaha, supra,* at p. 11.)

■ We construe statutes in a manner that carries out the legislative intent. (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) The words used are the primary source for identifying the drafter's intent. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230

[110 Cal.Rptr. 144, 514 P.2d 1224].) We give those words their usual and ordinary meaning where possible. (Code Civ. Proc., § 1858; *Trope, supra,* at p. 280.) We give significance to every word, avoiding an interpretation that renders any word or phrase surplusage. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798–799 [268 Cal.Rptr. 753, 789 P.2d 934].) We also interpret the words of a statute in context, harmonizing to the extent possible all provisions relating to the same subject matter. (*County of Alameda v. Pacific Gas & Electric Co.* (1997) 51 Cal.App.4th 1691, 1698 [60 Cal.Rptr.2d 187].)

The RCL is very specific about its purposes, or the ends it serves, and the means it employs to achieve those ends. Its purposes are to alleviate the hardship caused by a serious housing shortage and to provide reasonable protection to tenants. The means employed to achieve these ends are limiting landlords to a fair return, thus avoiding the unreasonable escalation of rents, controlling the removal of rental units from the housing stock and requiring just cause for eviction. (RCL, § 1800.)

The whole tenor of the RCL is the provision of *housing*, not ancillary residential rental usage. Every aspect of the RCL addresses a *housing crisis*. The exemptions provided in the RCL emphasize this. It permits the exemption of newly constructed residential units, which will serve to alleviate the housing shortage. (RCL, § 1801(c)(5).) It also permits the exemption of duplexes and triplexes if the owner occupies one unit, thereby recognizing that the failure to exempt these small structures might exacerbate the housing shortage by creating a disincentive to rent. (*Id.,* subd. (c)(4).) The RCL additionally permits the exemption of various types of transient residential units, such as hotel, motel or boardinghouse rooms (*id.,* subd. (c)(1)), as well as medical care, religious institution, educational, or nonprofit elder care residential units (*id.,* subd. (c)(2)), thus demonstrating that the focus of the RCL is long-term *housing*.

There are only two exceptions to this trend, one of which federal or state law or regulation would mandate and the other of which implements social policy. These are the permitted exemption of government-owned residential units specially made exempt by law and residential units used to provide nonprofit social services, such as child care. (RCL, § 1801(c)(3), (6).)

■ The RCL is equally specific about the term "tenant." While the term is not limited expressly to a person actually occupying the unit as a principal residence (RCL, § 1801(i)), it expressly specifies tenant, subtenant, lessee and sublessee, as well as "any other person entitled under the terms of a rental housing agreement to the use or occupancy" of the unit. The express

inclusion of these categories excludes all others not expressed. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67, 743 P.2d 1323].) In other words, the emphasis is upon *residents*.

The clear emphasis on providing housing reasonably supports the inference that the RCL authorizes regulations designed to ensure that its beneficiaries are those who reside principally in their rent-controlled units or who have a genuine and reasonable justification for not doing so on a temporary basis. Ensuring that only those the RCL intends to benefit receive its benefits by temporarily withdrawing some of its protections from tenants who use their rental units as vacation residences or for other ancillary purposes also is consistent with the RCL.

It bears noting that by limiting landlords to a fair return on investment, the RCL essentially requires landlords to subsidize rent in order to alleviate the hardships attending a severe housing shortage. It is one thing to require landlords to subsidize the rent of those who reside principally in their rent-controlled units so that they will not be forced out of the Santa Monica housing market. It is quite another to require landlords to subsidize the rent of those who use their rent-controlled units for other purposes. Doing so adds to the landlord's investment risk. This provides a strong disincentive for landlords to remain active or to expand their presence in the affordable housing market. Providing such a disincentive contravenes the purposes of the RCL, while removing it serves them.

Finally, Regulation 3304 does not conflict with the RCL's limitation of landlords to a fair return on investment or its antispeculation provisions (those denying rent increases when a landlord's negative cash flow was reasonably foreseeable), nor does it provide landlords with a windfall. Functionally, Regulation 3304 briefly removes from some protections of the RCL those tenants it was not intended to protect. Once a decontrolled rental rate has been established, Regulation 3304 restores all of the protections of the RCL to the tenant. Inasmuch as plaintiff or any other affected tenant is, as a matter of law, not entitled to the RCL's protections, temporarily removing some of them cannot conflict with any provision of the RCL, cannot reward a landlord for a speculative investment, and cannot give him a windfall.

The judgment is affirmed. Defendant is to recover its costs on appeal.

Mallano, J., and Rothschild, J., concurred.

On July 14, 2005, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 12, 2005.