[No. B181840. Second Dist., Div. One. Aug. 14, 2006.]

LISA BORTEN, Plaintiff and Appellant, v.
SANTA MONICA RENT CONTROL BOARD, Defendant and Respondent.

**COUNSEL**

Law Offices of Rosario Perry, Rosario Perry, Renay G. Rodriguez and Robert J. Franklin for Plaintiff and Appellant.

Caldwell, Leslie, Newcombe & Pettit, David Pettit, Michael Roth, Stephanie Christensen; David Daniels and Michaelyn Jones for Defendant and Respondent.

**OPINION**

**VOGEL, J.**—In *Bisno v. Santa Monica Rent Control Bd.* (2005) 130 Cal.App.4th 816 [30 Cal.Rptr.3d 441], we held that the Santa Monica Rent Control Law requires landlords to subsidize rent for those who reside principally in their rent controlled units, but not the rent of those who use their rental units for other purposes. We upheld the Santa Monica Rent Control Board's regulation 3304, which permits a landlord to petition the board for a determination that a tenant is not using a rental unit as his

primary residence, which determination (if favorable to the landlord) entitles him to raise the rent to conform to the more lenient statewide rent control law. In the case before us on this appeal, we explain that *Bisno* necessarily defeats a Santa Monica landlord's constitutional challenge to the board's involvement with a "tenant not in occupancy."

## FACTS

### A.

Lisa Borten, who owns an apartment building in Santa Monica, leased an apartment to Patricia Lard in 1995. At that time, Borten and Lard knew the apartment was subject to the Santa Monica Rent Control Law, and Borten knew Lard was living primarily in Texas.[1] In 2001, Borten filed a declaratory relief action against Lard, alleging there was a dispute between them about whether a nonresident tenant was entitled to the protection of the rent control law. Lard answered, and the case was tried to the court, which (in September 2002) found that, despite Lard's residency in Texas, she was nonetheless entitled to the benefits of the rent control law (so that Borten could not raise her rent or evict her except as allowed by the rent control law). A judgment was entered in favor of Lard.

Borten appealed, asking us to construe the rent control law to apply only to resident tenants. We declined, but remanded for further proceedings because the board had adopted a new regulation covering nonoccupant tenants: "In 1979, the City of Santa Monica adopted [the rent control law] and created an elected Rent Control Board to regulate rentals. (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 957 [81 Cal.Rptr.2d 93, 968 P.2d 993].) As originally adopted, the Rent Control Law defined 'tenant' broadly, to include a 'tenant, subtenant, lessee, sublessee or any other person entitled under the terms of a rental housing agreement to the use or occupancy of any rental unit.' (Santa Monica Charter, art. XVIII, § 1801(i).)[2] In February 2003, . . . Regulation 3304 was adopted to amend the Rent Control Law by distinguishing between a 'tenant not in occupancy' and one who resides in the apartment; under the new Regulation, a landlord who wants a determination that 'a tenant is a "tenant not in occupancy" under th[e] regulation must file a petition and obtain a Board decision that the tenant is a tenant not in occupancy prior to issuing a notice of rent increase.' (Reg. 3304(b) [the

---

[1] Lard, who works as an "international financial consultant" in Asia, Europe, and the United States, resides primarily in Texas, and also has an apartment in Italy. She used the Santa Monica apartment when she was in the area (about three months each year) and frequently allowed friends to use it.

[2] Undesignated section and regulation references are to the Santa Monica Rent Control Law (Santa Monica City Charter, art. XVIII, § 1800 et seq.; Santa Monica Rent Control Regulations).

regulation applies to 'a rental unit . . . kept for secondary occupancy, such as a vacation home, or purpose other than the tenant's residence . . . .'].)[3] . . .

"Lard contend[ed] the new Regulation moot[ed] [the first] appeal. . . . Borten disagree[d], contending the amendment [did] not diminish her right to a judicial determination of her claim that, *as applied to non-resident tenants,* the Rent Control Law constitutes an unconstitutional taking (because there is no legitimate state interest in that context). [¶] . . . Based on the importance of the issue raised by Borten, we conclude[d] the appropriate remedy [was] a remand to the trial court with directions to permit Borten to amend her complaint to add the Rent Control Board as a party, and to determine the constitutional issue after the case [was] again at issue and fully briefed by all parties." (*Borten v. Lard* (Aug. 22, 2003, B162404) [nonpub. opn.], fns. omitted.)

## B.

In November 2003, Borten filed a first amended declaratory relief complaint against Lard and the board. In 2004, Lard vacated the apartment and her default was entered. In January 2005, Borten's action against the board was tried to the court.[4] On February 8, 2005, the trial court entered judgment against Borten and in favor of the board, finding that the rent control law "as applied to non-resident tenants" is not an unconstitutional taking because it "substantially advances" the city's interest in providing affordable housing. In March, Borten filed a notice of appeal.

In May, the United States Supreme Court decided *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528 [161 L.Ed.2d 876, 125 S.Ct. 2074], unanimously clarifying the distinction between takings jurisprudence and due process jurisprudence and, more specifically, rejecting the proposition that an unconstitutional taking occurs merely because a regulation of private property does not "substantially advance" a legitimate state interest. (*Id.* at p. 545 [the " 'substantially advances' formula , . . . is not a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation"].)

---

[3] Regulation 3304 permits a landlord to petition the board for a determination that a rental unit is not the tenant's principal residence and the tenant is thus a "tenant not in occupancy," in which event the landlord may increase the rent to the comparable market vacancy rate allowable under state law; the regulation has exceptions (for example, for students and visiting faculty), and permits consideration of individual circumstances (for example, a medical condition requiring a temporary but prolonged absence).

[4] At trial, Borten's lawyer and the court agreed they were "talking about possessory [interests]." When the court asked whether the "only thing [Borten] want[ed was] just to be able to kick the nonresident tenant out," Borten's lawyer agreed: "Correct. So that we can return the unit to the scarce housing market that exists so this unit cannot be hoarded by some wealthy tenant that's living in Italy and just kept off the market[,] vacant."

In June, in *Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th 816, we rejected a tenant's challenge to regulation 3304 and held that it was within the board's jurisdiction to determine (as it had in *Bisno*) that a tenant was not occupying a rental unit as his principal residence, and that the landlord could therefore increase the rent for that unit.

Once again, the law has changed while an appeal in this case was pending.

## DISCUSSION

Borten contends the board's application of the rent control law to nonresident tenants violates her substantive due process rights. We reject the board's claim that the appeal is moot because Lard vacated her apartment (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1581, fn. 3 [12 Cal.Rptr.2d 476]) but conclude there is no need to reach the constitutional issue because it was necessarily resolved by our decision in *Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th 816.

If the rent control law required Borten to subsidize the rent of those who did not use their rent-controlled units as their primary place of residence, there might be some facial appeal to Borten's claims that the regulation amounted to a " 'total regulatory taking' " (*Lingle v. Chevron U.S.A. Inc., supra,* 544 U.S. at p. 548) or that it was sufficiently arbitrary to violate her due process rights. (*Id.* at p. 548 (conc. opn. of Kennedy, J.).) But those arguments cannot survive *Bisno,* where we explained that, "by limiting landlords to a fair return on [their] investment, the [rent control law] essentially requires landlords to subsidize rent in order to alleviate the hardships attending a severe housing shortage. It is one thing to require landlords to subsidize the rent of those who reside principally in their rent-controlled units so that they will not be forced out of the Santa Monica housing market. *It is quite another to require landlords to subsidize the rent of those who use their rent-controlled units for other purposes. Doing so adds to the landlord's investment risk[, thus providing] a strong disincentive for landlords to remain active or to expand their presence in the affordable housing market. Providing such a disincentive contravenes the purpose of the [rent control law], while removing it serves them.*" (*Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th at p. 823, italics added.)

 *Bisno* establishes the landlord's right to petition the board for a determination that a tenant is not occupying a rental unit, and the board's finding of nonoccupancy establishes the landlord's right to immediately "increase the maximum allowable rent to the comparable market-rate vacancy increase allowable under the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.), if that can be determined, or otherwise the median rent for

comparable units in the area . . . ." (*Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th at pp. 820–821.) The tenant then has three options: (1) she can pay the rent and stay, thus ending the dispute; or (2) she can voluntarily vacate the unit, at which point the landlord may immediately relet it at the rate permitted by the rent control law; or (3) she can refuse to pay and refuse to leave, at which point the landlord may evict her for nonpayment of rent (§ 1806) and then relet the unit at the rate permitted by the rent control law. (*Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th at p. 823 [once a decontrolled rental rate has been established, it continues only so long as the conditions establishing it exist].)

All these scenarios ensure the landlord's fair return on her investment while at the same time protecting the City of Santa Monica's interest in ensuring that the beneficiaries of the rent control law are those who reside principally in their rent-controlled units or who have a genuine and reasonable justification for not doing so on a temporary basis. (*Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th at p. 823.)

There are two final points to be made.

First, to the extent the board's brief can be read to suggest that the landlord has no right to evict a *nonpaying* tenant *after* the board has determined the tenant is not using the unit as her primary residence, we disagree. Under the plain language of section 1806, the landlord has the right to evict a tenant for nonpayment of rent; when the board finds the rent may be raised, the tenant's refusal to pay the increased rent triggers the landlord's eviction rights.

■ Second, we summarily reject Borten's suggestion that a Santa Monica landlord has a constitutional right, unfettered by the Santa Monica Rent Control Law, to evict a nonresident tenant who *does* pay her rent for a controlled rental unit. The rent control law's requirement of "just cause for any eviction from a controlled rental unit" (§§ 1800, 1806) is constitutionally sound (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 148 [130 Cal.Rptr. 465, 550 P.2d 1001]) and not subject to attack simply because Borten would prefer a stay-at-home tenant or because she contends (contrary to our holding in *Bisno*) that a nonresident tenant is not entitled to the protection of the rent control law (*Bisno v. Santa Monica Rent Control Bd., supra,* 130 Cal.App.4th at pp. 822–823).[5]

---

[5] Borten sees a distinction between absentee tenants and all other tenants because an absentee tenant's rental unit stands empty for long periods of time. She says no one will notice if there is a leak or other damage. There are two problems with this argument. First, it ignores the fact that all rentals (indeed all homes) are at risk when their occupants are away on extended vacations or for other reasons. Second, the argument at best supports an amendment to the rent control law, not judicial intrusion into areas left to another branch of government.

## DISPOSITION

The judgment is affirmed. The parties are to pay their own costs of appeal.

Mallano, Acting P. J., concurred.

**ROTHSCHILD, J.,** Concurring.—I write separately because my reasons for rejecting Borten's arguments differ from the majority's. In my view, Borten's due process challenge fails because the application of the anti-eviction provisions to nonresident renters is rationally related to a legitimate government purpose.

First, Borten errs when she assumes that in order to survive due process review, the anti-eviction provisions must be rationally related to the *stated* purpose of the rent control law (i.e., providing affordable housing for residents). Under rational basis review, all that is required is a rational relationship to *some* legitimate government purpose, not to the actual or stated purpose. (See, e.g., *FCC v. Beach Communications, Inc.* (1993) 508 U.S. 307, 314–315 [124 L.Ed.2d 211, 113 S.Ct. 2096].)

Second, application of the anti-eviction provisions to nonresidents is rationally related to the stated purpose of the rent control law. The Supreme Court has found that eviction controls are "a reasonable means of assuring compliance with maximum rent limits," so application of the anti-eviction provisions to residents is not open to serious challenge. (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 152 [130 Cal.Rptr. 465, 550 P.2d 1001].) But if nonresidents could be evicted without cause while residents could not, then landlords would have an incentive to rent to nonresidents rather than residents, because renting to nonresidents would give landlords greater control over the rented properties. It is rational for the city to deny that incentive to landlords in order to ameliorate the shortage of affordable housing for residents.

It might be objected that the city has already given landlords an incentive to rent to nonresidents instead of residents by allowing landlords to raise rent to market rates for nonresidents but not for residents. But the fact that the city has given landlords one incentive to rent to nonresidents does not mean that it is irrational for the city to refuse to give them other incentives as well. Rather, it is rational for the city to promote the availability of affordable housing for residents by refusing to give landlords additional incentives to rent to nonresidents instead of residents. Thus, given the undisputed legitimacy of the anti-eviction provisions for residents, application of those same provisions to nonresidents is rationally related to the purpose of providing

affordable housing for residents—it denies landlords an incentive to rent to nonresidents rather than residents.

Finally, in addition to her due process challenge, Borten argues that the board's application of the anti-eviction provisions to nonresidents exceeds the board's authority under the rent control law. In support of this argument, Borten asserts that under our decision in *Bisno v. Santa Monica Rent Control Bd.* (2005) 130 Cal.App.4th 816 [30 Cal.Rptr.3d 441], the purpose of the rent control law is to provide affordable housing for residents, not for nonresidents, so the board does not have the power to extend the protections of the rent control law to nonresidents. Borten's argument fails because, for the reasons I have already stated, the board's application of the anti-eviction provisions to nonresidents is a reasonable means of providing affordable housing for residents.

A petition for a rehearing was denied August 28, 2006, and appellant's petition for review by the Supreme Court was denied November 15, 2006, S146869.