Filed 7/14/14  P. v. Acevedo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065465 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF029169) |
| LORETTA MARIE ACEVEDO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Michael B. Donner, Judge.  Affirmed.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Loretta Acevedo appeals from a judgment convicting her of robbery, assault with a semi-automatic firearm, and other offenses that she committed in concert with a codefendant (Andrew Virrey). She raises two claims of instructional error. As to sentencing, she asserts the trial court was required to stay her sentence on the assault charge under Penal Code section 654.[1] We find no error and affirm the judgment.

Based on a request by Acevedo, for good cause shown, and without objection of the parties, a portion of the appellate record in this matter was ordered sealed. Because our resolution of Acevedo's instructional claims requires discussion of these sealed matters, the portion of this opinion available to the public has been redacted to remove Section I in which we discuss the instructional issues. The unredacted version of this opinion (containing Section I) has been filed under seal.[2]

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of July 24, 2009, Phillip Love, Jr. (Junior) was visiting his father, Phillip Love, Sr. (Senior), at the trailer park where Senior lived. When his father's dogs

---

[1]    Subsequent unspecified statutory references are to the Penal Code.

[2]    In the trial proceedings below, Acevedo and codefendant Virrey were tried together, but the trial court granted Virrey's motion to have two separate juries decide the case, and certain matters were presented to Acevedo's jury only. There were no objections to these procedures raised below or on appeal. Acevedo and Virrey filed separate appeals, and they were initially assigned the same appellate case number. Based on Acevedo's request, the matters presented solely to Acevedo's jury were subsequently ordered sealed on appeal. The parties were provided notice of and an opportunity to object to the sealing of the matters on appeal, and there were no objections. Thereafter, Acevedo's and Virrey's appeals were severed to facilitate the handling of the sealed matters, which relate solely to Acevedo's case.

started growling, Junior went to the screen door of the trailer and looked outside. A female and male (later identified as Acevedo and Virrey) asked him where Charlie was. Virrey said to Junior, "I saw you rolling with him last night." Junior responded Charlie did not live there and he did not know who Charlie was. Virrey told Junior, "I know you know him, he's the faggot."

Defendants entered the trailer and continued to ask where Charlie was, and Junior continued to respond he did not know and he did not even know a Charlie. Both defendants pulled out semi-automatic handguns. Acevedo was acting very aggressively, yelling "where's Charlie? Where's Charlie?" Speaking in a "[v]ery hostile and aggravated" tone, Acevedo said to Junior, "tell me where Charlie is, or I'm going to pistol whip the fuck out of you." When Junior again said he did not know who Charlie was, Acevedo hit him across the face with the barrel of the gun. A second man who was standing outside the trailer said he thought they had the wrong place.

Senior, who was sleeping when defendants arrived, was heavily medicated and lying in bed. Virrey nudged him awake, pointed a gun at him, and asked where Charlie was. Senior kept repeating he did not know who they were talking about, and Virrey said he was lying and better tell him where Charlie was.

During the incident Virrey took Junior's and Senior's cell phones and Senior's knife that was on the counter. When Senior pleaded that they not take the phones, Virrey said they would leave the phones outside; Junior and Senior should not follow them out; and if they went outside he would kill them. Senior's former roommate (Shellie Brown) arrived at the trailer towards the end of the incident. She knew Virrey and "just kind of

3

took control," asking defendants what they were doing and why they were there. After defendants were outside, Virrey came back and apologized for having come to the wrong house. Virrey asked Junior how old he was, and when Junior said he was 19, Virrey commented "that's too young to die." As Brown and defendants were walking away from Senior's trailer, Virrey told Brown that if she lived there she should move her trailer because "things were going to burn down."

Because they were afraid, Junior and Senior stayed inside the trailer for awhile. When they went outside, they could not find their phones or the knife.

When questioned about defendants' demeanors during the incident, Junior testified it appeared defendants were working together but Virrey was in charge. Virrey was speaking in a forceful manner, but he appeared calm and not "out of control." Acevedo was yelling and she appeared aggressive, aggravated, and "[a]lmost kind of hyper."

Several times during the incident, defendants called out "EYC," which referred to the gang Elsinore Young Classics. The prosecution's gang experts testified Virrey was a member and Acevedo was an associate of a rival gang, Elsinore Vatos Locos (EVL). A gang expert explained sometimes gang members call out a rival gang's name during the commission of crimes to direct law enforcement to the rival gang and away from the gang members' own gang. The experts opined the circumstances of the July 24 incident reflected the crimes were gang-related, associated with EVL, and of benefit to the gang.

*Jury's Verdict and Sentence*

For the July 24 incident at the trailer park, Acevedo was charged with two counts of robbery, with personal use of a firearm enhancements for each of these counts. She

4

was also charged with burglary (count 3); (2) assault with a semi-automatic firearm against Junior (count 4)[3]; and (3) possession of a firearm by a felon (count 5). Gang benefit enhancements were charged for all of these counts.

Acevedo's jury convicted her as charged. In a bifurcated proceeding, Acevedo admitted two prior prison terms. The court sentenced her to prison for 20 years eight months.

DISCUSSION

**SECTION I REDACTED AND FILED UNDER SEAL
PURSUANT TO COURT ORDER DATED JUNE 26, 2014**

II. *Multiple Punishment for Robbery and Assault*

The trial court selected the count 1 robbery of Junior as the principal count, and then for the count 4 assault on Junior, the court imposed a concurrent sentence for Acevedo. Acevedo argues the court was required to stay her sentence on the assault conviction because the same objective motivated the assault on Junior and the robbery of Junior.[4] In support, she contends the assault was committed to accomplish the robbery, and the facts supporting the assault were the same facts that supported the force or fear element of robbery.

When a defendant is convicted of two offenses that are part of an indivisible course of conduct, the sentence for one of the offenses must be stayed. (§ 654, subd. (a);

---

3      The information alleges the count 4 assault was against "JOHN DOE 1," and on appeal the parties agree this referred to Junior.

4      This issue was raised by codefendant Virrey in his appellate briefing, and Acevedo joined in the argument.

*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.) This rule is designed to ensure that a defendant's punishment is commensurate with his or her culpability. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1584.) Whether a transaction is divisible so as to allow multiple punishment depends on whether the defendant had an independent objective for each offense. (*Id*. at p. 1585.) If a defendant had multiple criminal objectives that were independent of and not merely incidental to each other, he or she may be punished for each statutory violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*Ibid*.)

On appeal we apply the substantial evidence standard to review the court's finding that the defendant had separate objectives. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.) We view the evidence in the light most favorable to the court's determination, and presume in support of the court's conclusion the existence of every fact that could reasonably be deduced from the evidence. (*Id.* at pp. 640-641.)

There is substantial evidence in the record from which the trial court could reasonably conclude Acevedo and Virrey, acting in concert, had two distinct objectives when they committed the robbery and assault of Junior: one, to steal the phone, and two, to heighten the assault and force Junior to disclose information about Charlie. Junior told a detective that after defendants asked for Charlie, Virrey demanded Junior's phone; when Junior refused, Virrey pulled his gun out and Junior then turned over the phone. Junior next told the detective about being pistol-whipped by Acevedo when he was unable to disclose Charlie's location.[5] Based on this evidence, the court could find the robbery of Junior's phone was accomplished by Virrey's assaultive threat with his gun and was designed to acquire the phone for defendants' use and/or to facilitate their anticipated escape by cutting off Junior's ability to immediately call 911. Further, the court could conclude the pistol-whipping assault was a separate infliction of force unrelated to the robbery that was designed to frighten Junior to such an extent that he would turn over information about Charlie's location. To the extent the robbery and assault of Junior shared common acts, this does not bar punishment for each offense based on these distinct objectives.

Acevedo's citation to cases where the courts found section 654 applied to robbery and assault convictions does not persuade us to reach a contrary conclusion. These cases

---

5    At trial, Junior at one point testified his phone was taken after he was pistol-whipped by Acevedo, and defendants "may have hit me because I didn't give [the phone] to them." However, upon further questioning he acknowledged he could not remember if his phone was taken before or after the pistol whipping. The trial court could reasonably assess that Junior's statement to the detective, made close in time to the incident, provided a more accurate description of what occurred.

are factually distinguishable because the force for the assault was intertwined with the force for the robbery and there was no evidence of a purpose apart from robbery. (See, e.g., *In re Henry* (1966) 65 Cal.2d 330, 331; *People v. Donohoe* (1962) 200 Cal.App.2d 17, 30-31.) In contrast here, the trial court could reasonably find the pistol-whipping constituted a use of force independent of the force used to take Junior's phone and reflected an additional objective apart from the taking of the phone. The courts have repeatedly held that multiple objectives may be found when a robber engages in assaultive conduct distinct from the force or threats used to obtain the property. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162-163 [in circumstances where defendant robbed victim, killed another victim, and then assaulted first victim, trial court could properly find assault was for separate purpose of preventing victim from alerting others about the murder]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 185, 193 [after robbers obtained property from victim, separate act of violence against unresisting victim need not be found incidental to robbery]; *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171.)

DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:

McDONALD, J.

IRION, J.

8