Filed 1/25/16  P. v. Gallardo CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>LUIS ARMANDO GALLARDO,<br><br>　　　Defendant and Appellant. | F069476<br><br>(Super. Ct. No. F10300870)<br><br><br>**OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Caitlin U. Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*　　　Before Levy, Acting P.J., Poochigian, J. and Franson, J.

A jury convicted appellant Luis Armando Gallardo of evading an officer (count 3/Veh. Code, § 2800.2, subd. (a)) and two counts of assault with a deadly weapon (counts 1 & 2/Pen. Code, § 245, subd. (a)(1)).[1]

On May 30, 2014, the court sentenced Gallardo to a five-year prison term, the upper term of four years on one assault conviction, a one-year term on his second assault conviction (one-third the middle term of three years) and a concurrent two-year term on his evading an officer conviction.

On appeal, Gallardo contends his sentence on the evading an officer conviction violates section 654's proscription against multiple punishment.[2] We affirm.

## FACTS

On December 27, 2009, at approximately 2:30 a.m., Kerman Police Sergeant Peter Magallon was in a marked patrol car traveling westbound on Stanislaus when he saw a man, later identified as Gallardo, driving a Mazda ahead of him. At the intersection with Madera Avenue, Gallardo ran a red light. Sergeant Magallon activated his overhead lights and Gallardo started accelerating away from him travelling 45 to 50 miles per hour in a residential area where the posted speed limit was 25 miles per hour. At First Street, Gallardo failed to stop at a stop sign and turned north. At San Joaquin Avenue, Gallardo turned east and drove to Madera Avenue where he turned south without stopping at a stop sign. At the intersection of Sunset and Madera Avenue, Gallardo turned off the Mazda's headlights, crossed over into the northbound lanes, and began driving southbound against traffic.

Sergeant Barcoma heard Sergeant Magallon broadcast on the radio that he was attempting to stop a vehicle that refused to stop and drove to the area with his overhead

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] By imposing a concurrent term on Gallardo's evading conviction, the court implicitly found that this term did not violate section 654.

lights activated. Sergeant Barcoma was driving north on Madera Avenue in the number one lane when he saw Gallardo's Mazda turn south onto Madera Avenue, cross into the northbound lanes, and continue traveling south in the number two lane.[3] Gallardo then drove the Mazda into the number one northbound lane and accelerated as he headed toward Sergeant Barcoma with his eyes focused straight ahead at the officer. Sergeant Barcoma quit pressing the accelerator and swerved into the number two lane in order to avoid hitting the Mazda, which came within a foot of striking the officer's patrol car as it continued traveling straight.

Sergeant Gurdeep Deol also heard Sergeant Magallon's broadcast and responded to the area. As Sergeant Deol traveled north on Madera Avenue in the number one lane he saw the Mazda, which was again traveling south in the northbound number two lane with its headlights off. The Mazda was approximately 300 feet away when Gallardo angled it towards Sergeant Deol's patrol car, which caused the officer to drive his vehicle more toward the median and brace himself for an impact. However, when the Mazda was two to three feet away from Sergeant Deol's car, it veered back into the number two lane.

Sergeant Deol drove to the intersection with Sunset and made a U-turn as Gallardo continued driving south and turned east onto F Street. Sergeant Deol followed Gallardo who immediately made a U-turn and drove back toward Madera Avenue. Gallardo then angled the Mazda towards the driver's side of Sergeant Deol's patrol car and came within five feet of the car, which caused Sergeant Deol to drive into the entryway of a parking lot. After turning around in the lot, Sergeant Deol saw that the Mazda had entered a center median island in an attempt to drive north in the southbound lanes and had gotten

---

**3**      Madera Avenue had two lanes for each direction of travel. The number one lane was the lane closest to the median. The number two lane was the lane closest to the edge of the street.

stuck on a raised portion of the curb. Gallardo then got out of the car and ran away. Although Gallardo avoided the officers that day, he was arrested on January 30, 2014.

## DISCUSSION

Gallardo contends the court violated section 654's proscription against multiple punishment when it imposed a concurrent term on his evading an officer conviction because the course of conduct during which he evaded officers and assaulted two of them shared the common intent and objective of escaping. He relies on *People v. Chacon* (1995) 37 Cal.App.4th 52 (*Chacon*) and *In re McCoy* (1968) 266 Cal.App.2d 739 in support of this contention. We reject Gallardo's claim of sentencing error.

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, under the plain language of the statute, multiple punishment, whether consecutive or concurrent, may not be imposed for a single "act or omission." (*Ibid; People v. Deloza* (1998) 18 Cal.4th 585, 594.) Section 654 also prohibits multiple punishment for multiple acts which comprise an "indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

A course of conduct is "indivisible" if the defendant acts with "a single intent and objective." (*In re Jose P.* (2003) 106 Cal.App.4th 458, 469.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal." (*People v. Herrera* (1999) 70

4.

Cal.App.4th 1456, 1466.)  The court's findings may be either expressed or implied from the court's ruling.  (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585.)

"[T]he fact certain acts are proximate in time is not determinative in finding an indivisible course of conduct.  Multiple criminal objectives may divide those acts occurring closely together in time."  (*People v. Bradley* (1993) 15 Cal.App.4th 1144, 1157, disapproved on another point in *People v. Rayford* (1994) 9 Cal.4th 1, 7.)  Thus, as our Supreme Court noted in *People v. Latimer* (1993) 5 Cal.4th 1203 (*Latimer*), "Some [decisions] have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment."  (*Id*. at pp. 1211-1212.)  The court in *Latimer* cited *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*) as an example.  (*Latimer*, *supra*, at p. 1212.)

In *Trotter*, the defendant was punished separately for two of three gunshots fired at a pursuing officer.  On appeal, the court rejected the defendant's claim of a single objective—"to avoid apprehension"—concluding that it was proper to punish him separately for the first two shots, which were fired "within one minute" of each other. (*Trotter*, *supra*, 7 Cal.App.4th at p. 366.)  The court observed:  "Defendant's conduct became more egregious with *each successive* shot.  Each shot posed a separate and distinct risk to [the officer] and nearby freeway drivers.  To find section 654 applicable to these facts would violate the very purpose for the statute's existence" (*id*. at p. 368), which is "'to insure that a defendant's punishment will be commensurate with his culpability.'"  (*Id*. at p. 367.)

"Furthermore, [*Trotter*] was not a case where only one volitional act gave rise to multiple offenses.  Each shot required a separate trigger pull.  All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible.  None was spontaneous or uncontrollable.  '[D]efendant should ... not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his ... assaultive behavior.'"  (*Trotter*, *supra*, 7

Cal.App.4th at p. 368, citing *People v. Harrison*, *supra*, 48 Cal.3d at p. 338.)  Finally, the court also observed that "even under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence ...."  (*Ibid.*)

Here, Gallardo had ample time while evading the officers to reflect on his conduct and pull over before he assaulted any of them.  Instead, his conduct became more egregious when he made a volitional, calculated decision to continue evading the officers by crossing into the northbound lane, turning his headlights off, and driving against the flow of traffic because this greatly increased the danger to the pursuing officers and other drivers.  Additionally, the court could reasonably find that in assaulting the officers, Gallardo harbored the additional intent and objective of injuring them by crashing into them head on or causing them to crash.  Moreover, imposition of punishment on Gallardo's evading an officer offense ensured that Gallardo's punishment was commensurate with his culpability.  Thus, we conclude that section 654 did not bar the court from imposing separate punishment on Gallardo's evading offense apart from that imposed on his assault offenses.  Further, section 654 did not bar the imposition of separate punishment on each of Gallardo's assault convictions because each conviction involved a different victim and section 654 does not apply to crimes of violence against multiple victims.[4]  (*People v. Oates* (2004) 32 Cal.4th 1048, 1063.)

---

[4]    The defendant in *Trotter* was also convicted of evading an officer and the trial court stayed the sentence it imposed on that count.  (*Trotter*, *supra*, 7 Cal.App.4th at p. 365.)  Gallardo cites *Trotter* in support of his contention that the court should have stayed the concurrent term it imposed on his evading an officer conviction.  It is unclear why the trial court in *Trotter* stayed the term it imposed on the defendant's evading an officer conviction.  However, the issue before the *Trotter* court was whether the terms imposed on the defendant's two assault convictions violated section 654 and the appellate court did not consider the propriety of the stayed sentence imposed on the defendant's evading an officer conviction.  "[I]t is axiomatic that cases are not authority for propositions not considered."  (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.)  Thus, *Trotter* does not assist Gallardo.

In *Chacon*, *supra*, 37 Cal.App.4th 52, in an effort to obtain a truck in which to escape, the defendant kidnapped, punched, choked, stabbed, and threatened to kill a California Youth Authority librarian. (*Id*. at p. 58.) This conduct resulted in the defendant being convicted of aggravated kidnapping for ransom, extortion, escape by force and violence, and assault and the trial court imposed unstayed sentences on each of these convictions. (*Id.* at pp. 56-57.) The *Chacon* court, however, found that because these offenses were part of an indivisible transaction whose singular objective was to escape, section 654 required a stay of the sentences imposed on the defendant's convictions for escape, extortion, and the assault involving the librarian.[5] (*Chacon*, *supra*, at p. 66.)

In *In re McCoy*, the court held that a state prison inmate who robbed a victim of car keys, in order to escape by car, could not be punished for both the escape and the robbery committed in order to allow the escape. (*In re McCoy*, *supra*, 266 Cal.App.2d 739, 740.)

Unlike *Chacon* and *In re McCoy*, here, substantial evidence supports the court's implied finding that Gallardo entertained multiple criminal objectives when he committed the assault offenses, i.e., to escape and to commit violence against the officers. Further, "at some point the means to achieve an objective may become so extreme they can no longer be termed 'incidental' and must be considered to express a different and a more sinister goal than mere successful commission of the original crime. We should not lose sight of the purpose underlying section 654, which is 'to insure that a defendant's punishment will be commensurate with his culpability.' [Citations.]" (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191.) Thus, we conclude that the court did not violate

---

**5** The court also found that section 654 did not require a stay of the sentence imposed on the defendant's assault conviction that involved a different victim. (*Chacon*, *supra*, 37 Cal.App.4th at pp. 66-67.)

section 654 when it imposed a concurrent term on Gallardo's evading an officer conviction.

## <u>DISPOSITION</u>

The judgment is affirmed.