Filed 7/14/14  P. v. Virrey CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066185 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF029169) |
| ANDREW SANCHEZ VIRREY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Michael B. Donner, Judge.  Affirmed and remanded with directions.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Andrew Virrey appeals from a judgment convicting him of robbery, assault with a semi-automatic firearm, and other offenses that he committed in concert with a

codefendant (Loretta Acevedo). Virrey argues the trial court was required to stay his sentence on the assault charge under Penal Code section 654, and the court erred in declining to dismiss his strike prior conviction.[1] We find no error and affirm the judgment. However, we remand the case and direct the superior court to correct clerical errors in Virrey's sentence set forth in the minute order and abstract of judgment.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of July 24, 2009, Phillip Love, Jr. (Junior) was visiting his father, Phillip Love, Sr. (Senior), at the trailer park where Senior lived. When his father's dogs started growling, Junior went to the screen door of the trailer and looked outside. A female and male (later identified as Acevedo and Virrey) asked him where Charlie was. Virrey said to Junior, "I saw you rolling with him last night." Junior responded Charlie did not live there and he did not know who Charlie was. Virrey told Junior, "I know you know him, he's the faggot."

Defendants entered the trailer and continued to ask where Charlie was, and Junior continued to respond he did not know and he did not even know a Charlie. Both

---

[1]    Subsequent unspecified statutory references are to the Penal Code.

[2]    In the trial proceedings below, Virrey and codefendant Acevedo were tried together, but the trial court granted Virrey's motion to have two separate juries decide the case, and certain matters were presented to Acevedo's jury only. There were no objections to these procedures raised below or on appeal. Acevedo and Virrey filed separate appeals, and they were initially assigned the same appellate case number. Based on a request by Acevedo and for good cause shown, the matters presented solely to Acevedo's jury were subsequently ordered sealed on appeal. The parties were provided notice of and an opportunity to object to the sealing of the matters on appeal, and there were no objections. Thereafter, Virrey's and Acevedo's appeals were severed to facilitate the handling of the sealed matters, which relate solely to Acevedo's case.

2

defendants pulled out semi-automatic handguns. Acevedo was acting very aggressively, yelling "where's Charlie? Where's Charlie?" Speaking in a "[v]ery hostile and aggravated" tone, Acevedo said to Junior, "tell me where Charlie is, or I'm going to pistol whip the fuck out of you." When Junior again said he did not know who Charlie was, Acevedo hit him across the face with the barrel of the gun. A second man who was standing outside the trailer said he thought they had the wrong place.

Senior, who was sleeping when defendants arrived, was heavily medicated and lying in bed. Virrey nudged him awake, pointed a gun at him, and asked where Charlie was. Senior kept repeating he did not know who they were talking about, and Virrey said he was lying and better tell him where Charlie was.

During the incident Virrey took Junior's and Senior's cell phones and Senior's knife that was on the counter. When Senior pleaded that they not take the phones, Virrey said they would leave the phones outside; Junior and Senior should not follow them out; and if they went outside he would kill them. Senior's former roommate (Shellie Brown) arrived at the trailer towards the end of the incident. She knew Virrey and "just kind of took control," asking defendants what they were doing and why they were there. After defendants were outside, Virrey came back and apologized for having come to the wrong house. Virrey asked Junior how old he was, and when Junior said he was 19, Virrey commented "that's too young to die." As Brown and defendants were walking away from Senior's trailer, Virrey told Brown that if she lived there she should move her trailer because "things were going to burn down."

3

Because they were afraid, Junior and Senior stayed inside the trailer for awhile. When they went outside, they could not find their phones or the knife.

When questioned about defendants' demeanors during the incident, Junior testified it appeared defendants were working together but Virrey was in charge. Virrey was speaking in a forceful manner, but he appeared calm and not "out of control." Acevedo was yelling and she appeared aggressive, aggravated, and "[a]lmost kind of hyper."

Several times during the incident, defendants called out "EYC," which referred to the gang Elsinore Young Classics. The prosecution's gang experts testified Virrey was a member and Acevedo was an associate of a rival gang, Elsinore Vatos Locos (EVL). A gang expert explained sometimes gang members call out a rival gang's name during the commission of crimes to direct law enforcement to the rival gang and away from the gang members' own gang. The experts opined the circumstances of the July 24 incident reflected the crimes were gang-related, associated with EVL, and of benefit to the gang.

During searches at a residence where Virrey was staying in September 2009, the authorities found an empty gun case, a gun, and indicia of Virrey's participation in EVL. When interviewed by a detective, Virrey admitted the gun was his.

*Jury's Verdict and Sentence*

For the July 24 incident at the trailer park, Virrey was charged with two counts of robbery, with personal use of a firearm enhancements for each of these counts. He was also charged with burglary (count 3); (2) assault with a semi-automatic firearm against

4

Junior (count 4)[3]; and (3) possession of a firearm by a felon (count 6). Gang benefit enhancements were charged for all of these counts (counts 1 through 4 and 6). Additionally, he was charged with being an active participant in a gang (count 7).

For offenses related to the September searches, Virrey was charged with possession of a firearm by a felon (count 8) and being an active participant in a gang (count 9).

Virrey's jury convicted him as charged, except it found the gang benefit enhancements for the robbery, burglary and assault counts (counts 1 through 4) to be not true. In bifurcated proceedings, Virrey admitted five prior prison terms, one serious felony prior conviction, and one strike prior conviction. The court sentenced Virrey to prison for 38 years.

## DISCUSSION

### I. *Multiple Punishment for Robbery and Assault*

The trial court selected the count 1 robbery of Junior as the principal count, and then for the count 4 assault on Junior, the court imposed a consecutive sentence for Virrey. Virrey argues the court was required to stay his sentence on the assault conviction because the same objective motivated the assault on Junior and the robbery of Junior. In support, he contends the assault was committed to accomplish the robbery, and the facts supporting the assault were the same facts that supported the force or fear element of robbery.

---

[3] The information alleges the count 4 assault was against "JOHN DOE 1," and on appeal the parties agree this referred to Junior.

When a defendant is convicted of two offenses that are part of an indivisible course of conduct, the sentence for one of the offenses must be stayed. (§ 654, subd. (a); *People v. Deloza* (1998) 18 Cal.4th 585, 591-592.) This rule is designed to ensure that a defendant's punishment is commensurate with his or her culpability. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1584.) Whether a transaction is divisible so as to allow multiple punishment depends on whether the defendant had an independent objective for each offense. (*Id.* at p. 1585.) If a defendant had multiple criminal objectives that were independent of and not merely incidental to each other, he or she may be punished for each statutory violation committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*Ibid.*)

On appeal we apply the substantial evidence standard to review the court's finding that the defendant had separate objectives. (*People v. Andra* (2007) 156 Cal.App.4th 638, 640.) We view the evidence in the light most favorable to the court's determination, and presume in support of the court's conclusion the existence of every fact that could reasonably be deduced from the evidence. (*Id.* at pp. 640-641.)

There is substantial evidence in the record from which the trial court could reasonably conclude Virrey and Acevedo, acting in concert, had two distinct objectives when they committed the robbery and assault of Junior: one, to steal the phone, and two, to heighten the assault and force Junior to disclose information about Charlie. Junior told a detective that after defendants asked for Charlie, Virrey demanded Junior's phone; when Junior refused, Virrey pulled his gun out and Junior then turned over the phone. Junior next told the detective about being pistol-whipped by Acevedo when he was

6

unable to disclose Charlie's location.[4]  Based on this evidence, the court could find the taking of Junior's phone was accomplished by Virrey's assaultive threat with his gun and was designed to acquire the phone for defendants' use and/or to facilitate their anticipated escape by cutting off Junior's ability to immediately call 911.  Further, the court could conclude the pistol-whipping assault was a separate infliction of force unrelated to the robbery that was designed to frighten Junior to such an extent that he would turn over information about Charlie's location.  To the extent the robbery and assault of Junior shared common acts, this does not bar punishment for each offense based on these distinct objectives.

Virrey's citation to cases where the courts found section 654 applied to robbery and assault convictions does not persuade us to reach a contrary conclusion.  These cases are factually distinguishable because the force for the assault was intertwined with the force for the robbery and there was no evidence of a purpose apart from robbery.  (See, e.g., *In re Henry* (1966) 65 Cal.2d 330, 331; *People v. Donohoe* (1962) 200 Cal.App.2d 17, 30-31.)  In contrast here, the trial court could reasonably find the pistol-whipping constituted a use of force independent of the force used to take Junior's phone and reflected an additional objective apart from the taking of the phone.  The courts have repeatedly held that multiple objectives may be found when a robber engages in

---

4      At trial, Junior at one point testified his phone was taken after he was pistol-whipped by Acevedo, and defendants "may have hit me because I didn't give [the phone] to them."  However, upon further questioning he acknowledged he could not remember if his phone was taken before or after the pistol whipping.  The trial court could reasonably assess that Junior's statement to the detective, made close in time to the incident, provided a more accurate description of what occurred.

7

assaultive conduct distinct from the force or threats used to obtain the property. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162-163 [in circumstances where defendant robbed victim, killed another victim, and then assaulted first victim, trial court could properly find assault was for separate purpose of preventing victim from alerting others about the murder]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 185, 193 [after robbers obtained property from victim, separate act of violence against unresisting victim need not be found incidental to robbery]; *In re Jesse F.* (1982) 137 Cal.App.3d 164, 171.)

## II. *Failure To Dismiss Virrey's Prior Strike Conviction*

Virrey argues the trial court abused its discretion when it declined to dismiss his strike prior conviction.

A trial court has the discretion to dismiss a strike prior conviction if, in light of the nature and circumstances of the current and prior felony convictions and the particulars of the defendant's background, character, and prospects, the defendant is deemed outside the spirit of the Three Strikes law in whole or in part. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) However, the Three Strikes law "establishes a sentencing norm, [and] carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

On appeal, we review the trial court's decision for abuse of discretion. (*People v. Carmony, supra*, 33 Cal.4th at p. 374.) The burden is on the defendant to clearly show

the sentencing decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

The probation report shows that Virrey's strike prior conviction was for a robbery he committed in 1992 and for which he was sentenced to prison for three years. Subsequently, in 1995, 1997, 1999, 2002, and 2004 he was convicted of various offenses, including petty theft with a prior, several drug-related offenses (possession for sale, possession, transportation for sale), and receiving a stolen vehicle. For these offenses he received repeated consecutive prison sentences (for 16 months, 32 months, 16 months, and 72 months). When interviewed by the probation officer, Virrey, age 40, stated he began smoking methamphetamine at age 20; he sold it on the streets; his use of the drug was the reason for many of his criminal activities; and in the past he had participated in various drug rehabilitation programs. He denied asking for Charlie at the victims' residence or taking their phones. He said he sold drugs at the trailer park; he was at the victims' trailer to collect money for a sale he had made earlier to Junior; Senior woke up and assaulted him with a knife so Virrey took the knife away; and Acevedo hit Junior in the face with her gun. In the probation report, the probation officer stated that in the current offense Virrey used a firearm and a show of gang force to create fear and intimidation in the community; he used the element of surprise to "corner the victims"; and he did not admit culpability and did not show remorse. The probation officer noted that although the majority of Virrey's criminal convictions appeared to have been drug related, his prior convictions were numerous and increasing in seriousness and he

9

repeatedly violated parole and returned to prison despite his parole agent's efforts to assist in his rehabilitation.

At sentencing, Virrey requested that the court dismiss his 1992 strike prior conviction, arguing the strike prior was relatively old; his subsequent convictions involved minor drug offenses; and his long-term drug use problem was the cause of his criminal acts. He submitted letters of support from family, friends, and an employer. The court denied the request to dismiss the strike prior, reasoning that although the prior conviction occurred in 1992, Virrey had been involved in many instances of criminal conduct and he was "exactly the kind of defendant that was envisioned when [the] three strikes law was contemplated." When imposing sentence the court also generally commented that the current offense was "extremely violent . . . . These men were sitting in their home minding their own business when two people with semiautomatic firearms burst in. One of the people is pistol-whipped. Their cell phones are stolen. A knife is taken. And I think it is fair to characterize what the son testified to, that he was terrified as to what was happening. . . . [¶] . . . [¶] . . . Telling a young man, essentially, that he was too young to die while holding a semiautomatic firearm[] demonstrat[ed] a high degree of cruelty, viciousness and callousness."

Virrey has not shown the trial court abused its discretion. Despite the fact that his strike prior occurred many years before the current offense and his drug addiction problems contributed to his criminal activity, he has engaged in a pattern of continued criminality and unsuccessful performance on parole, and, significantly, his current offense escalated to the use of firearms. This is not a case where the defendant showed a

10

long period of law-abiding behavior and his most recent offense was a nonviolent one. Defendant's history of criminal behavior and his use of a firearm in the current case supports the trial court's discretionary decision not to dismiss the strike prior conviction.

III. *Correction of Clerical Errors in Virrey's Sentence Set Forth*

*in Minute Order and Abstract of Judgment*

As Virrey points out, paragraph 4 of his abstract of judgment fails to contain a mark indicating he was sentenced under the Three Strikes law based on his strike prior conviction. Further, as the Attorney General points out, the minute order and abstract of judgment incorrectly state Virrey's sentence on the count 9 gang participation offense (§ 186.22, subd. (a)) was imposed concurrently, whereas the trial court stayed this sentence.

We remand the case and direct the superior court to correct these clerical errors.

DISPOSITION

The judgment is affirmed.  The case is remanded to the superior court with directions to make the following corrections:  (1) in the abstract of judgment, mark paragraph 4 to note Virrey was sentenced under the Three Strikes law; and (2) in the abstract of judgment and the January 27, 2012 minute order, identify his sentence on count 9 (gang participation offense, § 186.22, subd. (a)) as stayed.  The superior court shall transmit a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.